## COMMISSIONER OF INTERNAL REVENUE v. BATEMAN.

### No. 3718.

Circuit Court of Appeals, First Circuit.

April 7, 1942.

Michael H. Cardozo, IV, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and J. Louis Monarch, Sp. Asst. to Atty. Gen., J. P. Wenchel, Chief Counsel, and John W. Smith, Sp. Atty., Bureau of Int.Rev., both of Washington, D. C., on the brief), for petitioner for review.

Claude R. Branch, of Boston, Mass. (John Dane, Jr., and Choate, Hall & Stewart, all of Boston, Mass., on the brief), for Lady Marian Bateman.

Before MAGRUDER, MAHONEY, and WOODBURY, Circuit Judges.

MAGRUDER, Circuit Judge.

We have for decision another case presenting the question whether certain in-

come from trust property is taxable to the settlor of the trust. See our recent decisions in Fulham v. Commissioner, 1 Cir., 1940, 110 F.2d 916; Commissioner v. Branch, 1 Cir., 1940, 114 F.2d 985, 132 A.L.R. 839; White v. Higgins, 1 Cir., 1940, 116 F.2d 312, and Commissioner v. O'Keeffe, 1 Cir., 1941, 118 F.2d 639.

The Commissioner petitions for review of a decision of the Board of Tax Appeals (43 B.T.A. 69) that there are no deficiencies in income tax due from the respondent taxpayer for the taxable years 1935 and 1936. The applicable statutes are the Revenue Act of 1934, 48 Stat. 680, 26 U.S.C.A. Int.Rev.Acts, page 664 et seq., and the Revenue Act of 1936, 49 Stat. 1648, 26 U.S.C.A. Int.Rev.Acts, page 819 et seq. Sections 22(a), 161, 162, 166 and 167, which are identical in the two acts, are copied in the footnote.[1]

In 1904 the taxpayer, then Marian G. Knapp, a resident of New York, created the trust in question and transferred to third-party trustees a considerable amount of stocks and bonds. The trust was set up in contemplation of the taxpayer's forthcoming marriage to William Spencer Hanbury, Lord Bateman.

By the terms of the trust indenture the trustees were to hold, manage, invest and reinvest the trust property, and to receive

---

[1] "§ 22. Gross Income

"(a) General Definition. 'Gross income' includes gains, profits, and income derived from salaries, wages, or compensation for personal service, of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever. * * *"

"§ 161. Imposition of Tax

"(a) Application of Tax. The taxes imposed by this title upon individuals shall apply to the income of estates or of any kind of property held in trust, including—

"(1) Income accumulated in trust for the benefit of unborn or unascertained persons or persons with contingent interests, and income accumulated or held for future distribution under the terms of the will or trust;

"(2) Income which is to be distributed currently by the fiduciary to the beneficiaries, and income collected by a guardian of an infant which is to be held or distributed as the court may direct;

"(3) Income received by estates of deceased persons during the period of administration or settlement of the estate; and

"(4) Income which, in the discretion of the fiduciary, may be either distributed to the beneficiaries or accumulated.

"(b) Computation and Payment. The tax shall be computed upon the net income of the estate or trust, and shall be paid by the fiduciary, except as provided in section 166 (relating to revocable trusts) and section 167 (relating to income for benefit of the grantor). For return made by beneficiary, see section 142."

"§ 162. Net Income

"The net income of the estate or trust shall be computed in the same manner and on the same basis as in the case of an individual, except that—

"(a) There shall be allowed as a deduction (in lieu of the deduction for charitable, etc., contributions authorized by section 23(o) ) any part of the gross income, without limitation, which pursuant to the terms of the will or deed creating the trust, is during the taxable year paid or permanently set aside for the purposes and in the manner specified in section 23(o), or is to be used exclusively for religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals, or for the establishment, acquisition, maintenance or operation of a public cemetery not operated for profit;

"(b) There shall be allowed as an additional deduction in computing the net income of the estate or trust the amount of the income of the estate or trust for its taxable year which is to be distributed currently by the fiduciary to the beneficiaries, and the amount of the income collected by a guardian of an infant which is to be held or distributed as the court may direct, but the amount so allowed as a deduction shall be included in computing the net income of the beneficiaries whether distributed to them or not. Any amount allowed as a deduction under this paragraph shall not be allowed as a deduction under subsection (c) of this section in the same or any succeeding taxable year;

"(c) In the case of income received by estates of deceased persons during the period of administration or settlement of the estate, and in the case of income which, in the discretion of the fiduciary, may be either distributed to the bene-

the income therefrom, until the death of the taxpayer. Five per cent of the net income was to be added to the principal each year. Out of the remaining ninety-five per cent of net income $3,000 annually was to be paid to Lord Bateman during his lifetime and the balance was to be paid to the taxpayer. Upon the taxpayer's death Lord Bateman was to receive $50,000 if he survived her; and the balance of the trust estate, including accruals of income, or the entire trust estate if her husband should then be dead, was to be paid over to "such person or persons upon such uses, terms and conditions and for such estates and interests therein as I [the tax-payer-settlor], by my last will or by any instrument in writing signed by me in the presence of at least two witnesses, shall direct and appoint; but every appointment made by me in either mode in the exercise of this power shall be revocable during my life." In default of such appointment the trustees were directed to pay over the trust property to "the person or persons of kin to me by blood and not by adoption or by marriage, who by the laws of the State of New York then in force would be then entitled to receive the same had I then died intestate and possessed thereof, leaving no husband, and in the proportions prescribed by those laws."

It was further provided "that the trusts of this Indenture shall not, in any event, be terminated in my lifetime, and that neither I nor any [sic] my husband shall, in any event, be or become entitled during my life to demand or receive from the trustees any conveyance of the capital of the trust estate or of any part thereof."

All powers of management and control of the trust property were vested in the trustees. Except as previously stated, "all questions arising under this instrument and the nature, the obligation and the interpretation of this instrument shall be governed by the law of the Commonwealth of Massachusetts." The trustees were given power to select successor and co-trustees. In the taxable years the trustees were two individuals, Francis R. Hart and S. Parkman Shaw, Jr., both residents of Massachusetts. The taxpayer has never been a trustee of the trust. The books and corpus of the trust were kept in Boston, Massachusetts.

Lord Bateman, husband of the taxpayer, died in 1932.

On April 1, 1932, the taxpayer executed a note to the trust in the amount of $27,025.86 representing the unpaid balance of two previous advances made to the taxpayer and her husband. The note bore

---

ficiary or accumulated, there shall be allowed as an additional deduction in computing the net income of the estate or trust the amount of the income of the estate or trust for its taxable year, which is properly paid or credited during such year to any legatee, heir, or beneficiary, but the amount so allowed as a deduction shall be included in computing the net income of the legatee, heir, or beneficiary."

"§ 166. Revocable Trusts

"Where at any time the power to revest in the grantor title to any part of the corpus of the trust is vested—

"(1) in the grantor, either alone or in conjunction with any person not having a substantial adverse interest in the disposition of such part of the corpus or the income therefrom, or

"(2) in any person not having a substantial adverse interest in the disposition of such part of the corpus or the income therefrom, then the income of such part of the trust shall be included in computing the net income of the grantor.

"§ 167. Income for Benefit of Grantor

"(a) Where any part of the income of a trust—

"(1) is, or in the discretion of the grantor or of any person not having a substantial adverse interest in the disposition of such part of the income may be, held or accumulated for future distribution to the grantor; or

"(2) may, in the discretion of the grantor or of any person not having a substantial adverse interest in the disposition of such part of the income, be distributed to the grantor; or

"(3) is, or in the discretion of the grantor or of any person not having a substantial adverse interest in the disposition of such part of the income may be, applied to the payment of premiums upon policies of insurance on the life of the grantor (except policies of insurance irrevocably payable for the purposes and in the manner specified in section 23(o), relating to the so-called 'charitable contribution' deduction); then such part of the income of the trust shall be included in computing the net income of the grantor.

"(b) As used in this section, the term 'in the discretion of the grantor' means 'in the discretion of the grantor, either alone or in conjunction with any person not having a substantial adverse interest in the disposition of the part of the income in question.' ".

interest at five per cent which was paid by deducting such interest from the net income distributed by the trustees to the taxpayer. No payments on the principal of the note were made during the taxable years. The note was secured by the pledge of shares of corporate stock given on December 12, 1935, and by an appointment made by the taxpayer in 1932 in favor of the trustees, purporting to make her loan a first charge against her estate. The trustees reported the interest received on the note in their fiduciary returns.

During the taxable years 1935 and 1936 all capital gains were allocated to the corpus of the trust. Five per cent of the net income was accumulated and added to the corpus. The remaining ninety-five per cent of the net income during those years was paid to the taxpayer.

During the taxable years, Lady Bateman was a non-resident alien, residing in England.

The only question now before us is whether the Commissioner was right in including in the taxpayer's gross income the entire five per cent of the net income which was added to the corpus during 1935 and 1936, and determining a deficiency accordingly. The Board ruled that Lady Bateman was not taxable on these sums.

We consider first, and briefly, the subordinate contentions of the Commissioner that the five per cent of net income accumulated as required by the trust indenture was taxable income to Lady Bateman under the express provisions both of § 166 and § 167.

■ Under § 166 the argument is that the taxpayer had in effect a power to revoke and to revest title to the corpus in herself since she was the only person beneficially interested in the trust estate after the death of her husband and could under the applicable Massachusetts law have called for the termination of the trust and the payment over to her of the trust property. However, the taxpayer was not the only person beneficially interested, for there were gifts over to an indefinite class in default of appointment. It was the clear intention of the settlor, as expressed in the trust instrument, that the trust should not, in any event, be terminated during her lifetime, and it was carefully provided that neither the settlor nor her husband should in any event become entitled during the lifetime of the settlor to demand or receive from the trustees any conveyance of the trust property or any part thereof. Under these circumstances it is clear, in Massachusetts, that the taxpayer could not have revested the corpus of the trust in herself. Sands v. Old Colony Trust Co., 1907, 195 Mass. 575, 81 N.E. 300, 12 Ann. Cas. 837. See Gorey v. Guarente, 1939, 303 Mass. 569, 574, 22 N.E.2d 99.

■ Nor is the five per cent of the net income being "held or accumulated for future distribution to the grantor" within the meaning of § 167. This income was added to the principal by the mandatory provision of the trust instrument and will ultimately come to Lady Bateman's testamentary appointees or else in default of appointment to her next of kin by the New York law. In no event can such income be distributed "to the grantor". On this point we agree with the conclusion of the Board in John P. Wilson v. Commissioner, 1940, 42 B.T.A. 1260, 1266.

Since the five per cent of the net income was not distributed or distributable to Lady Bateman as beneficiary, and since this portion of the net income is not taxable to her as grantor or settlor under § 166 or § 167, she contends that § 161(b) is controlling and that the tax thereon "shall be paid by the fiduciary". But the matter is not so simple as that. The income may yet be attributed to the settlor by the broad sweep of § 22(a).

Notwithstanding the provisions of § 161, Helvering v. Clifford, 1940, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788, held that the grantor, rather than the fiduciary, is taxable on the trust income where the benefits directly or indirectly retained by the grantor blend so imperceptibly with the normal concepts of full ownership, that the grantor after the trust has been established may still, for tax purposes, be treated as the owner of the corpus. In Douglas v. Willcuts, 1935, 296 U.S. 1, 56 S.Ct. 59, 63, 80 L. Ed. 3, 101 A.L.R. 391, the court held that §§ 161 and 162 dealing with the taxation of trusts, fiduciaries and beneficiaries, were not "intended to apply to cases where the income of the trust would otherwise remain, by virtue of the nature and purpose of the trust, attributable to the creator of the trust and accordingly taxable to him. These provisions have appropriate reference to cases where the income of the trust is no longer to be regarded as that of the settlor, * * *." Further, the court

said, provisions in the revenue act defining specific instances in which the grantor remains taxable, are not "to be regarded as excluding instances not specified, where in contemplation of law the income remains in substance that of the grantor."

It is necessary, therefore, to consider whether the settlor here, notwithstanding the transfer of the property to trustees in 1904, retained benefits blending imperceptibly "with the normal concepts of full ownership" of the corpus; or whether the settlor, by reason of the purpose for which the income was being applied or accumulated, was enabled to procure, during the taxable years, satisfactions of economic worth which can only be obtained by the expenditure of money or property, so that such income may be said in substance to have been "realized" by her. See Helvering v. Horst, 1940, 311 U.S. 112, 116, 117, 61 S.Ct. 144, 85 L.Ed. 75, 131 A.L.R. 655.

In Helvering v. Clifford, supra, it was easy to say that the grantor remained in substance the owner of the corpus. The trust there was for a short term, and the corpus was to revert to the grantor at the end of five years, and perhaps sooner. Meanwhile the grantor, as trustee with sweeping powers of management, had full control of investment and reinvestment of the corpus and full power to vote the trusteed shares of stock. Also, during the term of the trust the settlor as trustee had "absolute power" to pay over to his wife all or any part of net income or to accumulate the same, although any such accumulations would go to the wife at the termination of the trust. The court said (309 U.S. at pages 335, 336, 60 S.Ct. at page 557, 84 L.Ed. 788): "We have at best a temporary reallocation of income within an intimate family group. Since the income remains in the family and since the husband retains control over the investment, he has rather complete assurance that the trust will not effect any substantial change in his economic position."

Another obvious case for the application of the Clifford principle was our decision in White v. Higgins, 1 Cir., 1940, 116 F.2d 312. While this was not a "short term trust" the settlor as dominant trustee had a practical power to revest the principal in herself; and meanwhile the income of the trust was being applied to pay premiums on a policy of insurance on the life of her husband, the proceeds of which, together with all other accumulations of trust property, were to be paid to the settlor upon the death of her husband, if the settlor were then alive, otherwise as she should appoint by will to members of her family.

Likewise, Commissioner v. Buck, 2 Cir., 1941, 120 F.2d 775, 777, cited by the Government, was an easy case for applying the Clifford principle. There the taxpayer conveyed shares of stock to a corporate trustee to pay the income to his wife for life and on her death to pay the income and ultimately the principal to his children or their descendants. Though the settlor did not make himself a trustee he reserved the power to remove the trustee and appoint a substitute, and to direct the trustee how to exercise its powers of investment and reinvestment; also he reserved the power to vote any of the stock held by the trust. In addition, he reserved the power to alter or amend in any respect whatsoever the provisions relating to the distribution of the income or principal, except that this power could not be exercised so as to revoke the trust, revest title to the principal in the settlor, or direct that the income be paid to him or accumulated for him or applied to the payment of insurance premiums on his life. Thus during his lifetime the settlor retained full control over the corpus, "coupled [with] the power, until his death, freely to sprinkle the income about among any beneficiaries he may select", and to rearrange the distribution of the principal. Substantially all he had given up was the power to use the income or principal for personal consumption purposes, which would be hardly a matter of consequence to a settlor with "income in excess of normal needs."

It seems to us that the Clifford case, supra, White v. Higgins, supra, and Commissioner v. Buck, supra, are easier for the Government than the case at bar.

On the other hand, Commissioner v. Branch, 1 Cir., 1940, 114 F.2d 985, 986, 132 A.L.R. 839, cited by the taxpayer, is a case much more clearly on the other side of the line. There the settlor made himself dominant trustee of certain securities in trust to pay the income to his wife for life. The trust was to continue during the wife's life and upon her death the property was to revert to the settlor if he survived her; otherwise it was to be held for the benefit of such persons as the wife might appoint by a general testamentary power, with remainders over in default of appointment. The settlor reserved no power to revoke

the trust. But it was provided that the wife might by formal instrument at any time during the joint lives of herself and the settlor, revoke the foregoing uses and trusts as to all or any part or parts of the trust estate, and appoint the same to other uses in whole or in part, and vest the same in the old trustees or new trustees upon other trusts, powers, discretions and limitations, "or in herself, or in any other person or persons, freed and discharged of all trusts, as she may see fit." In view of this power in the wife the effect was substantially the same as if the settlor had made an outright gift of the securities to the wife and she in turn had handed over the securities to her husband to manage as her agent. It might be rational for Congress under the concept of family solidarity to tax all family income as a unit. But very definitely Congress has not done this, and having in view the present statutory scheme, it would have done violence to all the "normal concepts of full ownership" to have said that the dilution in the settlor's control was insignificant and that in substance he remained the full owner of the corpus.

■ The present case falls in between Commissioner v. Branch on the one hand and Helvering v. Clifford, White v. Higgins and Commissioner v. Buck on the other hand. Here the settlor has not retained control of the corpus as trustee, as was the fact in the Clifford and Higgins cases; nor has she retained the power to give broad directions to the trustee respecting the management of the estate, as in the Buck case. In contrast to the Clifford case, the trust is not for a short term, nor will the corpus ever revest in Lady Bateman during her lifetime. In contrast to the Buck case, she cannot command the distribution of income or principal at any time during her lifetime to objects of her bounty. It is not indicative of control over the corpus that Lady Bateman, prior to the taxable years, procured from the trustees a loan at five per cent interest secured by a pledge of collateral. She reserved in the trust instrument no power to borrow from the trustee. Cf. William J. Garland v. Commissioner, 1940, 42 B.T.A. 324. But the principal and the five per cent of net income, which prior to the creation of the trust she might have disposed of during her lifetime as she saw fit, are now being held by the trustees for eventual distribution upon her death as she might direct in the exercise of a re-served general power of appointment. If her other income is "in excess of her normal needs", it might be argued that it would make little difference to her that the principal and income are not presently available for her use but are being held for disposition at her death as she might appoint. Could it be said that the settlor would feel herself any the poorer after this trust had been executed or, that if she did, such feeling would have any rational foundation in fact? See 309 U.S. at page 336, 60 S.Ct. 554, 84 L.Ed. 788.

Frankly we do not know how the Supreme Court would apply the general criteria of the Clifford case to the facts now before us. We have to make our decision with such light as is available to us. By the trust indenture the taxpayer irrevocably surrendered up control over investment and reinvestment of the corpus, and voting rights to the stock. In no event may she be revested with title to the corpus. She can no longer spend or give away the principal or the income during her lifetime. Assuming she has other property ample for her needs, it still is difficult to deny that as to the property she conveyed to trustees she gave up such substantial rights normally associated with the concept of "full ownership" that she should no longer be deemed in substance the "owner" of the corpus within the rationale of the Clifford case.

Assuming that the taxpayer is not taxable on the accumulated five per cent of net income on the theory that she remained in substance the full owner of the corpus, the more puzzling question remains, in view of the decided cases, whether, because of the manner in which such income is being applied under the trust instrument, the taxpayer derived during the taxable years such substantial economic benefits from it that the income should be attributable to her under the broad provisions of § 22(a). This requires a comment on several Supreme Court decisions:

Lucas v. Earl, 1930, 281 U.S. 111, 50 S.Ct 241, 74 L.Ed. 731. The whole income of a husband, by way of salary and attorney's fees earned by him in 1920, was held taxable to him notwithstanding a valid contract between him and his wife made in 1901 by which all their several earnings, including salaries and fees, were to be received, held and owned by both as joint tenants. The court said (281 U.S. pages 114, 115, 50 S.Ct. page 241, 74 L.Ed. 731): "There is no doubt that the statute could

tax salaries to those who earned them and provide that the tax could not be escaped by anticipatory arrangements and contracts however skilfully devised to prevent the salary when paid from vesting even for a second in the man who earned it. That seems to us the import of the statute before us and we think that no distinction can be taken according to the motives leading to the arrangement by which the fruits are attributed to a different tree from that on which they grew."

Douglas v. Willcuts, 1935, 296 U.S. 1, 56 S.Ct. 59, 80 L.Ed. 3, 101 A.L.R. 391. The settlor transferred securities to a corporate trustee in trust to pay a stated annual income to his divorced wife in fulfillment of his continuing statutory duty of support. The amounts of income so paid were held taxable to the settlor because this application of income resulted in economic benefit to him by the corresponding discharge of his legal obligation.

Helvering v. Horst, 1940, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75, 131 A.L.R. 655. An owner of negotiable bonds who reported income on the cash receipts basis detached negotiable interest coupons before their due date and delivered them as a gift to his son, who in the same year collected them at maturity. It was held that under § 22(a) there had been a realization of income taxable to the donor. The court said (311 U.S. page 117, 61 S.Ct. page 147, 85 L.Ed. 75, 131 A.L.R. 655): "Although the donor here, by the transfer of the coupons, has precluded any possibility of his collecting them himself he has nevertheless, by his act, procured payment of the interest, as a valuable gift to a member of his family. Such a use of his economic gain, the right to receive income, to procure a satisfaction which can be obtained only by the expenditure of money or property, would seem to be the enjoyment of the income whether the satisfaction is the purchase of goods at the corner grocery, the payment of his debt there, or such non-material satisfactions as may result from the payment of a campaign or community chest contribution, or a gift to his favorite son."

Helvering v. Eubank, 1940, 311 U.S. 122, 61 S.Ct. 149, 150, 85 L.Ed. 81. The taxpayer upon his retirement in 1924 as a general life insurance agent was entitled under the terms of his contract to certain renewal commissions on premiums thereafter collected by the company on policies written prior to the termination of his agency, without obligation on his part to perform any further services. Thereafter, in the same year, he made an assignment of his right, title and interest in the contract as well as in the renewal commissions. Though the court stated that "* * * no purpose of the assignments appears other than to confer on the assignees the power to collect the commissions", it seems to have been assumed that the assignment was intended as a gift to the assignee of the right to receive the renewal commissions. See the Board's decision in the case, 39 B.T.A. 583, at page 588. On the authority of the Horst case the court held that commissions paid to the assignee in 1933 were taxable under § 22(a) as income of the assignor.

Harrison v. Schaffner, 1941, 312 U.S. 579, 61 S.Ct. 759, 761, 85 L.Ed. 1055. The life beneficiary of a trust assigned to her children specific amounts in dollars from the income of the trust for the year following the assignment. The court held that the assigned income which was duly paid by the trustees to the several assignees in the following year was taxable to the assignor under § 22(a). Referring to §§ 22(a), 161(a) and 162(b), the court said: "In construing these and like provisions in other revenue acts we have uniformly held that they are not so much concerned with the refinements of title as with the actual command over the income which is taxed and the actual benefit for which the tax is paid. See Corliss v. Bowers, 281 U.S. 376, 50 S.Ct. 336, 74 L.Ed. 916; Lucas v. Earl, supra; Helvering v. Horst, supra; Helvering v. Eubank, supra; Helvering v. Clifford, supra. It was for that reason that in each of those cases it was held that one vested with the right to receive income did not escape the tax by any kind of anticipatory arrangement, however skillfully devised, by which he procures payment of it to another, since, by the exercise of his power to command the income, he enjoys the benefit of the income on which the tax is laid."

It is to be noted from the foregoing quotation that the court in the Schaffner case grouped together Lucas v. Earl, the Horst, Eubank, Clifford and Schaffner cases under one unified formula. However, in Lucas v. Earl the taxpayer had command of the income during the taxable year, because he might have refrained from performing the services for which the com-

pensation was to be paid. In the Horst case the owner of the bond had command over the income during the taxable year and in the same year procured its payment to his son by transfer to him of the negotiable coupons. But in the Eubank case the taxpayer did not have command of the income during the taxable year because his services had been completed in the past and he had many years before transferred to an assignee all his right, title and interest in the agency contract under which the renewal commissions were payable. In the Clifford case the taxpayer had command of the trust income during the taxable years only in the sense that he had discretion as trustee to pay the income currently to his wife or to accumulate it for ultimate distribution to her at the end of the short term trust. In the Schaffner case the taxpayer during the taxable year had no command over the assigned income; however much he might have repented of the assignment made the previous year, the income nevertheless had to go to his assignee.

Superficially, the case at bar might seem a stronger one for the Government than either the Eubank or Schaffner cases, for in the taxable years Lady Bateman had greater command over the income than did the taxpayers in those two cases. Notwithstanding her transfer of the corpus to trustees in 1904, she still, during the years in question, retained power to determine the ultimate disposition of the current income.

But it seems that the formula above quoted from the Schaffner case cannot be taken literally. In a literal sense it might be read to mean that one presently owning property and thus "vested with the right to receive income" therefrom is ever thereafter subject to a tax on such income, regardless of any transfer, in trust or otherwise, "by which he procures payment of it to another" in succeeding years. True, the income may in the subsequent years go as the transferor once willed it to go. That would be equally true if the former owner had made an outright gift to a favored donee. Whether the transferor in the subsequent years experiences any "satisfaction" from this application of the income will depend a good deal upon his then state of mind. That the Supreme Court meant to lay down no such revolutionary proposition is evident from its reaffirmation in the Schaffner case of its

unanimous decision three years earlier in Blair v. Commissioner, 1937, 300 U.S. 5, 57 S.Ct. 330, 81 L.Ed. 465, where the life beneficiary under a trust assigned to one of his children an interest amounting to $9,000 in each calendar year thereafter out of the net income which the beneficiary was then or might thereafter be entitled to receive during his lifetime; the court construed the assignment as a transfer in praesenti to the donee of a life interest in the trust corpus and held in consequence that the income thereafter paid to the donee was taxable to him and not the donor. Again, as Blair v. Commissioner was explained in the Horst case, 311 U.S. at page 119, 61 S.Ct. at page 148, 85 L.Ed. 75, 131 A.L.R. 655: "* * * the income of the trust was regarded as no more the income of the donor than would be the rent from a lease or a crop raised on a farm after the leasehold or the farm had been given away." To take another familiar situation: Suppose A transfers securities to a trust company upon an irrevocable trust to pay the income to B for life and at his death to pay over the corpus to a charity. One looks in vain for any indication in § 22(a) or in any other section of the revenue act that Congress intended the income from the trust property in such a case to be regarded thereafter as still belonging to the donor. See Commissioner v. Chamberlain, 2 Cir., 1941, 121 F.2d 765, 766; Helvering v. Elias, 2 Cir., 1941, 122 F.2d 171, 172, 173. No doubt the Treasury would thereafter collect less surtaxes from the donor than if he had held on to the property. Cf. Helvering v. Achelis, 2 Cir., 1940, 112 F.2d 929.

Perhaps the explanation of the Eubank case is that under the interpretation of the statute in Lucas v. Earl, "income derived from salaries, wages, or compensation for personal service" is always taxable to the person who earned the compensation, and the tax cannot be deflected from the earner to another by means of an assignment. See Blair v. Commissioner, 1937, 300 U.S. 5, 11, 57 S.Ct. 330, 81 L.Ed. 465, thus distinguishing Lucas v. Earl. As to the Horst and Schaffner cases, it may be said that one who retains substantial ownership of the tree is taxable on the fruit thereof, despite his assignment to a donee of the right to pick the fruit. This seems to be the idea of the court in the Schaffner case, where it said (312 U.S. at pages 582, 583, 61 S.Ct. at page 761, 85 L.Ed. 1055): "We think

that the gift by a beneficiary of a trust of some part of the income derived from the trust property for the period of a day, a month or a year involves no such substantial disposition of the trust property as to camouflage the reality that he is enjoying the benefit of the income from the trust of which he continues to be the beneficiary, quite as much as he enjoys the benefits of interest or wages which he gives away as in the Horst and Eubank cases."

This review of the cases still does not indicate to us as clearly as we should wish how the case at bar should be decided.

The power retained by Lady Bateman over the disposition of the corpus would require the inclusion of the whole trust property in her gross estate upon her death, for purposes of the estate tax. See Internal Revenue Code, § 811(c). This, however, is not conclusive, for there are many instances where property is taxable as part of the estate of a decedent though prior to his death the decedent was not taxable upon the income thereof. For instance, if A conveys property to trustees in trust to pay the income to B for life and upon B's death to pay over the principal as B should appoint by will to B's children, with gifts over to such children in equal shares in default of appointment, and A reserves the power to revoke the trust with the consent of B, who is a person adversely interested, the case does not fall within § 166 and unless further facts appear the income is not taxable to the grantor; but upon A's death the whole of the trust property is includible in his gross estate for purposes of the estate tax. Helvering v. City Bank Farmers Trust Co., 1935, 296 U.S. 85, 56 S.Ct. 70, 80 L.Ed. 62. Also, while the donee of a testamentary power of appointment has as full control over the disposition of the property upon his death as if he had been the full owner and had disposed of the property by will, it is of course far from true to say that during his lifetime a donee of such a power has the equivalent of full ownership.

But Lady Bateman has here more than a mere testamentary power of appointment over the corpus. Throughout her lifetime the ultimate disposition of the five per cent of net income remains ambulatory, and subject to her same general power of appointment, effective at her death. In a certain real sense she retains command of this income. She could by an instrument in writing signed in the presence of two witnesses effect a tentative allocation of this income (or an equivalent amount of the augmented principal) to a favored donee at her death, but if later such donee should displease her she could revoke the appointment and make a similar allocation to someone else. In effect, by the trust instrument, there is being built up a fund for eventual distribution at her death to the object or objects of her bounty. By virtue of her ultimate control over this income and over the trust corpus she may feel freer in the disposition of her other property and income. As the trust corpus is yearly being augmented by the addition of this income for her ultimate disposition as aforesaid, may it not be argued, along the line of the Horst case, that Lady Bateman received during the taxable years satisfactions of economic worth which could be obtained only by the expenditure of money or property, so that such income may properly be said to have been "realized" by her? No doubt Congress could constitutionally tax such income as hers. Burnet v. Wells, 1933, 289 U.S. 670, 680, 681, 53 S.Ct. 761, 77 L.Ed. 1439. The difficulty is in finding out whether Congress has done so.

The argument for taxability, however arresting, seems to prove too much. Would it not be equally applicable if Lady Bateman were merely a donee of the power of appointment and not also, as here, the donor of the power? As mere donee of such a power, she would still have the same command over the income, and for what the argument is worth, she would still be receiving during the taxable years the same satisfactions of economic worth as a result of the accumulation of the income to await her eventual disposition. Yet we do not believe that a mere donee of such a power would under the present statutory scheme be held taxable on the income. Cf. Richardson v. Commissioner, 2 Cir., 1941, 121 F.2d 1.

■ If there is any difference in the two situations it must be in the feeling that a settlor should not be allowed to diminish his own surtaxes by the creation of such a second taxable unit, namely, a trust in which the settlor, as here, reserves a general testamentary power of appointment. See Helvering v. Clifford, supra, 309 U.S. at page 335, 60 S.Ct. 554, 84 L.Ed. 788. We do not stop to discuss the large question how far such a feeling should be a factor in judicial decision on a matter of statutory interpretation. Cf. Paul, Studies in Fed-

eral Taxation (1937) pp. 9–157, a chapter on "Restatement of the Law of Tax Avoidance." "Expediency may tip the scales when arguments are nicely balanced." Woolford Realty Co., Inc., v. Rose, 1932, 286 U.S. 319, 330, 52 S.Ct. 568, 570, 76 L.Ed. 1128. In any event, the present is not an appropriate case for judicial straining to prevent the consummation of a purpose of tax avoidance, for the trust was set up in 1904, long before the United States began to tax income under the 16th Amendment, and Lady Bateman had no purpose either of tax evasion or of tax avoidance. To hold the income now in question taxable to her would seem to go beyond the legitimate scope of statutory interpretation and would involve logical contradictions likely to prove embarrassing in later cases. We reach this conclusion not without some misgivings, in view of the uncertainty as to the proper implications to be drawn from the decisions we have reviewed.

It may be that if a settlor in 1942 should set up a trust in similar terms for the obvious purpose of cutting down his surtaxes, our decision in the present case might make it difficult for us to hold that such a settlor is taxable on the trust income accumulated subject to his testamentary power of appointment. We need not cross that bridge now. If the present case suggests a method of tax avoidance that ought not to be open, the Congress can close the door by amendment of the law, as it has often had occasion to do in the past. The courts under the guise of statutory interpretation cannot carry the whole burden of "plugging up the holes".

The decision of the Board of Tax Appeals is affirmed.