ESTATE OF HIRAM SOLOMON, DECEASED, CAROLYN MANSON (FORMERLY CAROLYN SOLOMON), ADMINISTRATRIX, AND CAROLYN MANSON (FORMERLY CAROLYN SOLOMON), PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 54472.    Filed November 30, 1956.

*Harry Friedman, Esq.,* for the petitioners.
*Joseph F. Rogers, Esq.,* for the respondent.

OPINION.

KERN, *Judge:* The sole question now before us for decision is whether under the somewhat peculiar facts of the instant case the petitioner, who was the settlor, life beneficiary, and co-trustee of a trust, should be taxed under section 22 (a) of the Internal Revenue Code of 1939 on the capital gains, which were realized by that trust in 1950 and which were neither distributed nor distributable to her as such life beneficiary under the laws of the jurisdiction in which the trust was administered. *Hutchison* v. *Ross*, 262 N. Y. 381; *In re Bank of Richmondville, et al.*, 259 App. Div. 4, affd. 284 N. Y. 671.

The respondent determined that such capital gains were taxable to the petitioner because she retained under the terms of the trust indenture such control over the trust corpus as to be the substantial owner thereof for income tax purposes under the principle set forth in *Helvering* v. *Clifford*, 309 U. S. 331. Specifically, the respondent points to the following incidents of ownership retained by the taxpayer: (1) The retention of the life interest to trust income; (2) the right to ·invade the corpus if the yearly income was ever less than $7,500 during her mother's lifetime or less than $15,000 after her mother's death; (3) the right to become co-trustee with her own attorney in the event of the resignation of the designated trustee who was her mother; (4) the power to provide, with the consent of herself and Ross, as co-trustees, that "the said trust estate be payable to the issue of the settlor, or any of them, her surviving in such shares and in such manner as she may from time to time determine"; and (5) the right of ultimate disposition after the death of Estelle "in any such manner as may be directed in the said settlor's last will and testament."

The petitioner contests the validity of the respondent's determination and argues that she neither received the particular capital gains nor did she derive any economic benefit from any of the rights or powers reserved to her in the trust indenture, since those powers and rights were so limited as to be of no significance in the taxable year involved. The petitioner cites, among other authorities, the cases of *Commissioner* v. *Bateman*, (C. A. 1, 1942) 127 F. 2d 266, affirming

43 B. T. A. 69, and *May Chandler Goodan*, 12 T. C. 817 (further hearing at 8 T. C. M. 1119, Par. 12.110 P.-H. T. C. 1949), affd. 195 F. 2d 498 (C. A. 9, 1952), both cases involving the question of whether undistributable income of a trust was taxable to the trust or to its grantor.

Our problem is to consider whether "the benefits directly or indirectly retained by the grantor blend so imperceptibly with the normal concept of full ownership, that the grantor after the trust has been established may still, for tax purposes, be treated as the owner of the corpus." *Commissioner* v. *Bateman, supra.* The answer to this question "must depend on an analysis of the terms of the trust *and all of the circumstances attendant on its creation and operation.*" (Emphasis supplied.) *Helvering* v. *Clifford, supra.* Each case must rest on its own peculiar facts and circumstances. *Harold F. Jones,* 6 T. C. 412.

Many of the provisions of the trust instruments pointed to by respondent in his argument might properly be considered by us as factors in determining whether the nondistributable income of the trust should be taxable to the settlor under the doctrine of the *Clifford* case, but, as that case itself admonishes us, we must consider not only the provisions of the trust instruments but also "all of the circumstances attendant on [the trust's] creation and operation."

We point out and emphasize the obvious fact that the trust in the instant case was not created by petitioner for the purpose of segregating a superfluous part of her fortune in order to accumulate at lower tax rates the means of bestowing financial benefits upon beloved or dependent members of her family. Cf. *Stanley J. Klein,* 4 T. C. 1195, affd. 154 F. 2d 58. As respondent himself vigorously states in his brief, Carolyn's primary concern was for Carolyn and there is no suggestion that her purpose in creating or administering the trust was to accumulate nondistributable income for the purpose of benefiting anyone else, or that the addition to the corpus of the capital gains realized by the trust in 1950, required by New York law, was not unforeseen and involuntary so far as Carolyn was concerned. In this respect and considering these circumstances, the instant case is stronger for the taxpayer than *Commissioner* v. *Bateman, supra.*

We also point out that the purpose for the creation of the trust in the instant case was not to provide Carolyn with a familially eleemosynary hose through which she could sprinkle during her lifetime financial benevolences among objects of her bounty. Cf. *Commissioner* v. *Buck,* 120 F. 2d 775; *Louis Stockstrom,* 3 T. C. 255. Even her posthumous sprinkling could only be between her mother and her issue (consisting at the time of trial herein of one daughter, Wendy). Her mother was the life tenant of two-thirds of her father's substantial estate and her daughter (with whom "there is communica-

tion but not actual meeting" by Carolyn) was substantially provided for by her deceased father. Under these circumstances, we are unable to conclude that Carolyn could obtain any substantial "indirect satisfactions" resulting from the vicarious pleasure of the consumption of the income (or the receipt of the principal) by her mother or her issue stemming from the hypothetical exercise of any of her rights provided by the trust indenture.

Another factor to which respondent points as properly relevant to the question before us is Carolyn's right to require an invasion of the trust principal if the income of the trust distributable to her should be less than $7,500 a year prior to her mother's death and $15,000 a year after her mother's death. We have found no case in which this factor has led to the inclusion in the settlor-beneficiary's taxable income of the nondistributable income of a trust. However, in a somewhat analogous case arising under section 166 of the Revenue Act of 1934, involving the question whether capital gains of a trust required by State law to be added to corpus were nevertheless taxable to the beneficiary because of the power of the settlor-beneficiary to invade the trust principal if the trust income should be insufficient "for the upkeep of her home and her personal enjoyment," we held that it was a power which could be exercised only upon the happening of a contingency in the nature of a condition subsequent, the occurrence of which is entirely fortuitous, and that until the contingency occurs it is no power at all or at most an incipient or inchoate power. *Lewis Hunt Mills, Administrator*, 39 B. T. A. 798. In the instant case Carolyn had no power to invade the trust corpus in 1950 since the distributable income of the trust exceeded $7,500 by almost $20,000. While it is possible that at some future time petitioner may have the power to invade the trust corpus, it does not appear to us to be probable. Cf. *William H. Robertson*, 26 T. C. 246. In the absence of authority compelling us to a contrary result, we are of the opinion that this highly speculative inchoate power does not justify the inclusion of nondistributable trust income in the taxable income of the settlor-beneficiary under the provisions of section 22 (a) as interpreted in the *Clifford* case.

Respondent also points to the broad administrative powers which petitioner had under the trust indenture as co-trustee and contends that this also is a factor which tends to support his determination. However, this is not a case in which the trust corpus consists of securities of corporations in which the settlor-trustee is personally interested. Cf. *Louis Stockstrom, supra*. The corpus of this trust consisted of miscellaneous marketable securities, plus the remainder interest in two-thirds of her father's estate which was being administered by her mother. Regardless of the broad managerial and administrative powers of the co-trustees laboriously spelled out in the trust indenture,

it is obvious from the testimony of Carolyn's co-trustee, Ross, that the managerial problems incident to the trust were negligible, and that the managerial powers of Carolyn as nominal co-trustee were of little practical importance.

Thus, when we analyze the terms of the trust indenture on which respondent relies as justifying his determination herein in the light of "all the circumstances attendant upon its creation and operation," we are unable to conclude that "the benefits directly or indirectly retained by the grantor blend so imperceptibly with the normal concept of full ownership, that the grantor after the trust has been established may still, for tax purposes, be treated as the owner of the corpus."

*Decision will be entered for petitioners.*