DONALD S. BLACK, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 6190.    Promulgated September 19, 1945.

*Luther Day, Esq., Thomas M. Harman, Esq.,* and *L. C. Weiss, C. P. A.,* for the petitioner.
*Thomas F. Callahan, Esq.,* for the respondent.

OPINION.

SMITH, *Judge*: This proceeding is for the redetermination of deficiencies in income tax for the years 1939, 1940, and 1941 in the respective amounts of $893.92, $7,008.30, and $9,635.37. The question in issue is whether the petitioner is liable to income tax in respect of the income of a trust which he created in 1937 for the benefit of his son and afterborn children.

The facts have all been stipulated.

The petitioner is a resident of Mansfield, Ohio. He filed his income tax returns for 1939, 1940, and 1941 on the cash basis with the collector of internal revenue for the eighteenth district of Ohio, at Cleveland.

On October 18, 1937, the petitioner created an irrevocable trust for the benefit of his son and of any of his children who might be born' thereafter. His son, Joel S. Black, was born April 23, 1937. A second son, Terrence C. Black, was born July 28, 1939. Petitioner's family during the taxable years involved consisted of himself, his wife, and his two sons, all of whom resided together.

The trust indenture named the petitioner's father, Frank B. Black, as the sole trustee, but provided that upon his death, resignation, or incapacity to act the petitioner himself should become trustee. It was further provided that in the event the petitioner became trustee and ceased to act as such by reason of his death, resignation, or incapacity, his two brothers, Roger A. Black and Robert B. Black, should become successor trustees.

Petitioner transferred to the trustee on October 19, 1937, 6,000 shares of class A common stock of the Ohio Brass Co. and $5,000 face amount of United States bonds. On the same date his father, Frank B. Black, and his mother, Jessie B. Black, each transferred to the trust 2,000 shares of such class A stock. The corpus of the trust has at all times consisted of such stock and bonds. Petitioner's father continued to act as trustee of the trust until his death on December 19, 1937, whereupon he was succeeded by the petitioner as trustee.

With respect to the management of the trust estate by the trustee, the trust agreement contains the following provisions:

The Trustee shall have absolute control of the Trust Estate and of any parts into which it may be divided, and shall handle, manage, sell (subject to the limitation hereinafter imposed with respect to shares of Class "A" Common Stock of The Ohio Brass Company), invest and reinvest, lease for any term irrespective of the period of the Trust, and deal with the Trust Estate in such manner and form as to him shall seem wise, all statutory requirements or other limitations as to the investment of Trust Funds now or hereafter enacted or prescribed being hereby expressly waived, and in the execution of the Trust the Trustee is authorized and empowered to comply with all legal requirements as to the execution of all writings, deeds, leases and other documents and formalities without the order of any court. The Trustee may retain in the Trust Estate without liability for depreciation the bonds now deposited hereunder and any other property which may hereafter be placed in the Trust Estate as an additional deposit. It is understood that the Trustee does not guarantee investments hereunder but he shall be held responsible for the exercise of good faith and reasonable diligence in the execution of the Trust.

The Trustee shall at all times have power finally to determine what is income and what is principal of the Trust Estate and to apportion gains, expenses and losses to principal or income as to him shall seem equitable.

The Trustee shall have authority to designate a nominee to hold title to any part or all of the Trust Estate if he shall deem such action to be wise, but the Trustee shall be liable for any wrongful act of such nominee with reference to any property, the title to which shall be so placed in his name.

The Trustee shall keep true and correct books of account showing the condition of the Trust Estate, which books of account shall at all reasonable times

be open to the inspection of the Donor or his duly appointed representative, and after the death of the Donor such books of account shall at all reasonable times be open to the inspection of any beneficiary entitled to receive net income or principal hereunder or the duly appointed representative of such beneficiary.

The Trustee shall also furnish annually to the Donor a detailed statement of all receipts and disbursements on account of the Trust Estate, and a statement showing the manner and form in which the Trust Estate is then invested, and following the death of the Donor such annual statement shall be rendered to each beneficiary entitled to receive net income or principal hereunder.

From the gross income derived from the Trust Estate the Trustee shall pay all charges and expenses necessary for the proper care, management and preservation thereof (excepting, however, such portion or portions as under the rights hereinbefore granted he shall determine should be paid from principal), including the compensation of the Trustee as hereinafter stated.

\* \* \* \* \* \* \*

The net income derived from the Trust Estate the Trustee shall pay on the first day of each month in equal shares to the children of the Donor living at the respective times when such payments of income shall be due, but counting and treating as one such child the living heirs of the body of any child of the Donor who may be deceased, provided, however, that while either the said FRANK B. BLACK or DONALD S. BLACK or ROBERT B. BLACK or ROGER A. BLACK shall be acting as Trustee hereunder, then from the share of net income which would, but for this proviso, be payable to such child as above stated, such Trustee may pay to or for the benefit of any child of the Donor such amounts only from time to time as in the sole discretion of the Trustee shall be by him considered necessary or for the best interests of such child. Any amounts of a child's share of net income which such Trustee shall consider unnecessary or inadvisable to pay over to such child, the Trustee shall accumulate in a Separate Fund for the benefit of such child, with all the rights and powers over such Accumulated Separate Fund as are hereinbefore given to the Trustee, and said Accumulated Separate Fund the said FRANK B. BLACK, DONALD S. BLACK, ROBERT B. BLACK or ROGER A. BLACK while acting as Trustee hereunder, may pay over and deliver to such child, or to the heirs of the body of such child, at any time or from time to time as he deems for the best interests of such child or such heirs of the body; and provided further that if such Accumulated Separate Fund of any such child shall not have been paid to such child, or to the heirs of the body of such child, and neither the said FRANK B. BLACK, DONALD S. BLACK, ROBERT B. BLACK or ROGER A. BLACK shall be acting as Trustee hereunder, then the same or so much as remains shall at the time of the division of the principal of the Trust Estate into equal shares as hereinafter provided, be added to the share set aside for such child, or set aside for the heirs of the body of such child, but if such child shall not be living and there shall be no heir of the body of such child living at that time, said Accumulated Separate Fund heretofore derived from the income of such child's share shall be added to the principal of the Trust Estate and treated as a portion thereof.

The trust agreement also provides that so long as any one of the named members of the Black family is acting as trustee such acting trustee may "distribute all or any part of the principal of the Trust Estate, share and share alike, among the children of the said Donor but counting and treating as one such child the heirs of the body of any such child who shall have died leaving heirs of the body living at that time, which heirs of the body shall take per stirpes."

It was further provided that when none of the named members of the Black family shall be acting as trustee "the successor Trustee shall divide the Trust Estate into as many equal shares as there shall then be living children of the Donor but counting as one such living child the heirs of the body of any of the children of the Donor who shall have died prior thereto having heirs of the body living at that time." The shares of any such heirs were to be immediately distributed to them unless they were under twenty-one years of age, in which event the trustee might use such amounts of income and principal of such heirs' shares as he should deem advisable for their care, support, and education. As such heirs attained the age of twenty-one their shares were to be distributed to them. To the living children of the donor the successor trustee (other than one of the named Blacks) was to distribute one-fourth of the trust estate when they attained the age of thirty years, and a like proportion at the end of each subsequent five-year period.

It is further provided that the trust shall terminate in any event within twenty years and eleven months after the death of the survivor of the donor, his wife, and his children living at the date of the creation of the trust, and that any part of the trust estate which shall not have been distributed at that time is to be then "distributed to the persons then entitled to the net income therefrom and in the proportion in which they are then entitled to receive the net income therefrom."

Provision is made for the appointment of an incorporated bank or trust company as trustee by any one of the named members of the Black family while acting as trustee, provided that such individual shall continue to act as cotrustee and provided further that such individual cotrustee shall have exclusive power to vote the shares of class A stock of the Ohio Brass Co. in the trust estate and the discretionary powers as to the distribution of income and principal. No corporate trustee has ever been appointed under this provision.

The trust agreement further provides that so long as any class A common stock of the Ohio Brass Co. shall be held as a part of the principal of the trust estate the trustee, before selling any such stock, shall first offer it for sale to the donor's two brothers or the survivor at the same price at which the trustee is willing to sell same to other persons.

The trust could not be altered, amended, or revoked.

At all times since the inception of the trust separate accounting records have been maintained for the trust and all the trust income has been accounted for therein and shown as having been distributed currently. Likewise, separate accounting records have been maintained for each of the beneficiaries and such records show that the trust income was distributed currently for the accounts of the beneficiaries and invested in municipal bonds, which were at all times held by petitioner,

as the father and natural guardian of the beneficiaries, in a safe deposit box in which such bonds were segregated and labeled as to ownership as between such beneficiaries.

During the tax years involved herein the taxable trust income consisted exclusively of dividends on the class A stock of the Ohio Brass Co. The income of the trust for each year involved was as follows:

| Year | From stock transferred by petitioner | From stock transferred by Frank B. and Jessie B. Black | Total |
|---|---|---|---|
| 1939 | $6,000 | $4,000 | $10,000 |
| 1940 | 12,000 | 8,000 | 20,000 |
| 1941 | 12,000 | 8,000 | 20,000 |

The following tabulation discloses the amounts of income of the trust received by the petitioner for each beneficiary during these years, broken down as between income from the trust and income from municipal bonds:

| Year | Joel S. Black | | Terrence C. Black | |
|---|---|---|---|---|
| | Trust income (Ohio Brass Co. dividends) | Other income (municipal bond interest) | Trust income (Ohio Brass Co. dividends) | Other income (municipal bond interest) |
| 1937 | $7,500 | | | |
| 1938 | 2,500 | | | |
| 1939 | 5,000 | $78.35 | $5,000 | |
| 1940 | 10,000 | 312.50 | 10,000 | $312.50 |
| 1941 | 10,000 | 425.00 | 10,000 | 425.00 |

Federal income tax returns were filed by the trustee for each taxable year after the creation of the trust, which show distribution of the trust income to the beneficiaries. For each year that the amount of taxable income required it, Federal income tax returns of the beneficiaries were filed, in which was reported as their taxable income their respective shares of such income. For the same years Ohio personal property tax returns of the beneficiaries were filed, in each of which their respective beneficial interests in the trust were listed as taxable property of each beneficiary, and Ohio personal property taxes were paid accordingly.

No part of the trust income has ever been used for the support, maintenance, or education of the beneficiaries, children of petitioner, nor has it ever been used for any purpose other than to p y the income and personal property taxes set forth in the preceding paragraphs hereof and to invest same for the accounts of the beneficiaries. Petitioner has at all times paid from his own funds all sums expended for the care, maintenance, support, and education of his children and otherwise discharged all other financial obligations as a parent.

Petitioner's father, Frank B. Black, was one of the founders of the Ohio Brass Co. From shortly after its organization in about 1890 until 1928 he was president, and from 1928 until his death in December 1937 he was chairman of the board of directors. Petitioner was first employed by the company from January 1, 1928, to September 1932, when he was laid off on the basis of seniority because of lack of work. He was reemployed on the same basis on January 1, 1933, and is presently a member of the sales force of the company in charge of sales to public utilities. Petitioner has served as a director of the company since February 1, 1937, but has never held any other corporate office with the company.

The compensation paid to Frank B. Black, petitioner, and petitioner's brothers and the total of officers' and other salaries paid by the Ohio Brass Co. during the years 1935 to 1941, inclusive, are as follows:

|  | 1935 | 1936 | 1937 | 1933 | 1939 | 1940 | 1941 |
|---|---|---|---|---|---|---|---|
| Frank B. Black | $12,000 | $13,200 | $12,650 | (deceased) | | | |
| Robert B. Black | | 25 | 15 | $15 | $15 | $20 | $25 |
| Donald S. Black | 2,400 | 2,520 | 3,516 | 3,000 | 2,875 | 3,198 | 3,788 |
| Roger A. Black | 3,600 | 3,900 | 5,300 | 4,500 | 4,500 | 5,094 | 6,235 |
| Total officers' compensation and other salaries | 143,116 | 160,193 | 253,910 | 148,082 | 158,159 | 208,493 | 276,953 |

For several years prior to 1935 petitioner had been the owner of 15,000 shares out of a total of 139,500 shares of the outstanding class A stock of the Ohio Brass Co. The company had outstanding both class A and class B common stock, which were on a parity in all respects except that voting rights were vested in the class A stock only. In February 1935 petitioner acquired 1,000 shares from his father, making a total of 16,000 shares, or approximately 11½ percent of the total stock outstanding. His brothers Robert and Roger each owned the same amounts after February 1935, and at the same time petitioner's father owned 12 015 shares and his mother 15,000 shares.

Petitioner's transfer of the 6,000 shares of the class A stock to his father as trustee under the trust agreement of October 18, 1937, reduced his holdings to 10,000 shares. The holdings of the trust were increased to a total of 10,000 shares by the gifts of 2,000 shares each to the trust by petitioner's father and mother.

The 6,000 shares of the class A stock transferred to the trust by petitioner had a value which constituted approximately 7 percent of petitioner's net worth as of that date.

On August 12, 1935, petitioner's brother, Roger A. Black, owned 16,000 shares of the class A stock. On that date he created a trust similar to that subsequently created by petitioner, in which his father, Frank B. Black, was named as trustee and his, Roger's, children as beneficiaries. Roger transferred to the trustee 4,000 shares of his

class A stock upon the creation of the trust and an additional 2,000 shares of the same stock on October 19, 1937. On this latter date Frank B. Black and Jessie B. Black each transferred 2,000 shares of the same stock to the trust. Roger Black has retained ownership to the present time of his remaining 10,000 shares of the class A stock.

On August 12, 1935, petitioner's other brother, Robert B. Black, owned 16,000 shares of class A stock. On that date he created a trust similar to those created by his brother, Roger, and the petitioner, in which his father, Frank B. Black, was named as trustee and his, Robert's, children as beneficiaries. Upon the creation of the trust Robert transferred to the trustee 4,000 shares of his class A stock of the Ohio Brass Co. and on October 19, 1937, transferred an additional 2,000 shares of such stock. On October 19, 1937, Frank B. Black and Jessie B. Black each transferred 2,000 shares of such stock to the trustee under the trust created by Robert B. Black. Robert B. Black has retained ownership to the present time of his remaining 10,000 shares of the class A stock.

After the various transfers of class A stock to the several trusts by petitioner and his brothers, and by his father and mother, 75,015 shares of class A stock were held as follows:

|  | Shares |  | Shares |
|---|---|---|---|
| Robert B. Black | 10,000 | Jessie B. Black | 9,000 |
| Roger A. Black | 10,000 | Robert B. Black Trust | 10,000 |
| Donald S. Black | 10,000 | Roger A. Black Trust | 10,000 |
| Frank B. Black | 6,015 | Donald S. Black Trust | 10,000 |

Petitioner duly filed with the collector of internal revenue at Cleveland, Ohio, a Federal gift tax return, Form 709, for the calendar year 1937, in which was listed as a taxable gift the 6,000 shares of the Ohio Brass Co. class A stock transferred by him to the trustee under the trust agreement executed by him on October 18, 1937, and the resulting gift tax was paid.

Frank B. Black and Jessie B. Black likewise filed gift tax returns for the calendar year 1937 with respect to the 2,000 shares of class A common stock of the Ohio Brass Co., which each contributed to the trust involved herein.

Petitioner's annual income, both taxable and nontaxable for Federal income tax purposes, was, for the years indicated and for the purpose of this proceeding, approximately as follows:

| 1935 | $80,847.89 | 1939 | $80,671.92 |
|---|---|---|---|
| 1936 | 94,957.24 | 1940 | 94,967.54 |
| 1937 | 116,940.45 | 1941 | 95,841.84 |
| 1938 | 71,217.24 |  |  |

Respondent, pursuant to the provisions of section 29.167–3 of Regulations 111, has granted to petitioner an extension of time within which election may be made with respect to the retroactive applica-

tion of section 167 (c) to the income of the trust of October 18, 1937, for the tax years involved herein.

The respondent has determined that petitioner is taxable on the income of the trust for the years 1939, 1940, and 1941 "in accordance with the provisions of Section 22 (a) of the Internal Revenue Code, as amended, and/or Section 167 of the Code." Any question of a deficiency under this latter section has been eliminated by the provisions of section 167 (c) and the compliance by the petitioner with the provisions of section 29.167–3 of Regulations 111 with respect to the retroactive application of section 167 (c).

The respondent contends that the principle of *Helvering* v. *Clifford*, 309 U. S. 331, is applicable here. That case stands for the proposition that, where the grantor of a trust has the economic benefits of the trust property, he may properly be taxed upon the income therefrom. Respondent contends that the petitioner had such economic benefits of the assets of the trust involved herein. He submits that petitioner had income in excess of his means; that the income of the trust was received and held by him, albeit as guardian for his children; and that he had such powers of control over the assets and the income as to make him taxable upon the income. He states in his brief that:

\* \* \* Under the Trust instrument the Trustee was given full and plenary powers of investment such as he would possess if he were the absolute owner of the "trust estate in his private individual capacity." He was given absolute control of the trust estate and the right to deal with the trust estate in such manner and form as to him seemed wise, all statutory requirements or other limitations as to the investment of trust funds being expressly waived. \* \* \*

In support of his contention respondent cites *Stockstrom* v. *Commissioner* (C. C. A., 8th Cir.), 148 Fed. (2d) 491; *Edison* v. *Commissioner* (C. C. A., 8th Cir.), 148 Fed. (2d) 810; *Lewis A. Cushman, Jr.*, 4 T. C. 512; and *Joel E. Hall*, 4 T. C. 506.

An examination of the trust agreement does not bear out the contentions of the respondent. There is no such wording or phraseology as that the trustee was given full and plenary powers of investment such as he would possess if he were the abolute owner of the "trust estate in his private individual capacity." Such language was contained in the trust instruments involved in the *Stockstrom* and *Edison* cases, *supra*, relied on by the respondent, and in *Miller* v. *Commissioner* (C. C. A., 6th Cir.), 147 Fed. (2d) 189; and *Funsten* v. *Commissioner* (C. C. A., 8th Cir.), 148 Fed. (2d) 805.

In *Lewis A. Cushman, Jr., supra*, the trust instrument provided:

4. Trustees shall from time to time, but only upon the written direction of Grantor or, after his death, of his said wife, sell any or all of the property constituting the trust estate at the prices and upon the terms contained in such direction. \* \* \*

Petitioner, as grantor, had no such power.

In *Joel E. Hall, supra,* petitioner created an irrevocable trust for a fifteen-year period, designating his four daughters as beneficiaries. He named himself trustee and was to have "unlimited powers of investment, contract, compromise, sale, lease and otherwise" with respect to the trust property. He could distribute the income or withhold it as he saw fit and the income not distributed became principal. He could invade principal for the education and maintenance of the main beneficiaries or to meet the expenses of illness, emergency, or other extreme misfortune. Except in the case of his wife, if she should succeed him as trustee, the above unlimited powers over corpus reserved to himself were denied to others as successor trustees. We held that the taxpayer, the grantor of the trust, was taxable on the income thereof for the taxable year. Our decision, however, was reversed by the Circuit Court of Appeals for the Tenth Circuit on July 2, 1945, in *Hall* v. *Commissioner,* 150 Fed. (2d) 304.

If the petitioner had not become trustee of the trust here in question we do not think that any contention could validly be made that he was taxable upon the income of the trust; for he retained no power to control the trustee. Such powers as he could exercise as trustee were those which could properly be exercised by any trustee. A grantor-trustee who has only such powers in respect of the trust property and income as may be exercised for the benefit of the beneficiary is not taxable upon income of the trust. See *Carrier* v. *Carrier,* 226 N. Y. 114; 123 N. E. 135, cited in *Hall* v. *Commissioner, supra.*

We do not overlook the fact that members of the Black family, prior to the execution of the trusts by the three Black brothers, owned slightly more than 50 percent of the voting stock of the Ohio Brass Co. It is reasonable to assume that they desired to retain such control. That apparently was the purpose of the provision in the trust instruments that the trustee of each trust, before selling any such stock, should first offer it for sale to the donor's two brothers upon the same terms and conditions as the trustee would be willing to sell same to any other person or persons. We do not think, however, that the retention of voting control by members of the Black family is of controlling importance, since the evidence of record shows that the voting control has not in the past, and up to and including the taxable years, been used for the direct benefit of the Black family to any substantial degree. Moreover, it can be assumed that the members of the Black family would always act in harmony. The petitioner, through stock owned by himself and as trustee, could vote only about 11 percent of the stock of the Ohio Brass Co.

As stated by the Supreme Court in *Helvering* v. *Clifford, supra,* as to whether a grantor-trustee has the economic benefits of the trust property "must depend on an analysis of the terms of the trust and all the circumstances attendant on its creation and operation."

Upon the evidence of record in this case, the trust was not "created and operated" for the economic benefit of the petitioner. There was no temporary reallocation of income among members of a family group as there was in the *Clifford* case. The trust created was irrevocable. By transferring a portion of his property to the trust the petitioner parted with it forever.

We are of the opinion that petitioner is not taxable upon the income of the trust herein involved for the years 1939, 1940, and 1941.

*Decision will be entered under Rule 50.*