## Harold F. Jones and Rita C. Jones, Husband and Wife, Petitioners, v. Commissioner of Internal Revenue, Respondent.

Docket No. 4152.    Promulgated March 11, 1946.

*William E. Sims, Esq.*, and *Ewing Everett, Esq.*, for the petitioners.
*J. R. Riggles, Esq.*, for the respondent.

422

OPINION.

DISNEY, *Judge*: (1) The Commissioner determined that the income of the trust created by petitioner on August 21, 1935, for the years 1937, 1938, and 1939, was taxable to him under the provisions of section 22 (a) of the Internal Revenue Code and the corresponding provisions of the Revenue Acts of 1936 and 1938, and respondent relies on that section, as construed in *Helvering* v. *Clifford*, 309 U. S. 331, and related cases, such as *Richardson* v. *Commissioner* (C. C. A., 2d Cir.), 121 Fed. (2d) 1; certiorari denied, 314 U. S. 684; rehearing denied, 314 U. S. 711; *Commissioner* v. *Barbour* (C. C. A., 2d Cir.), 122 Fed. (2d) 165; certiorari denied, 314 U. S. 691; *Commissioner* v. *Woolley* (C. C. A., 2d Cir.), 122 Fed. (2d) 167; certiorari denied, 314 U. S. 693. *Louis Stockstrom*, 3 T. C. 255; affd. (C. C. A., 8th Cir.), 148 Fed. (2d) 491; certiorari denied, 326 U. S. 719; *Ben F. Hopkins*, 5 T. C. 803.

The petitioner contends that the income of the trust is taxable to the trust under section 161 (a) (1) and that it is not taxable to the petitioner under the *Clifford* and other cases, *supra*, following it, relying in particular upon *Hall* v. *Commissioner* (C. C. A., 10th Cir.), 150 Fed. (2d) 304; *Donald S. Black*, 5 T. C. 759; *Herbert*

*T. Cherry*, 3 T. C. 1171; *David Small*, 3 T. C. 1142; *Estate of Benjamin Lowenstein*, 3 T. C. 1133; and *Frederick Ayer*, 45 B. T. A. 146.

For the determination of the question involved herein, as stated in *Miller* v. *Commissioner* (C. C. A., 6th Cir.), 147 Fed. (2d) 189, "there are no precise standards or guides, either in the Act, regulations or decisions of the courts * * *. Each case must rest upon its own peculiar facts and circumstances." To similar effect see *Herbert Cherry*, 3 T. C. 1171, 1177. In *Helvering* v. *Elias* (C. C. A., 2d Cir.), 112 Fed. (2d) 171, it is stated:

* * * the court must look to the whole nexus of relations between the settlor, the trustee, and the beneficiary, and if it concludes that, in spite of their changed legal relations, the three continue in fact to act and feel toward each other as they did before, the income remains the settlor's * * *.

Under the trust created by the petitioner such part of the income thereof "as the Trustee may in his discretion deem necessary or proper for * * * [her] comfort, support and/or happiness" and also such amounts from the principal "as the Trustee may in his discretion deem necessary for * * * [her] comfort, support and/or happiness" was payable to petitioner's wife during her life. Upon the wife's death the fund remaining was to be divided into two equal parts, petitioner's son to receive "such income [of one part] and also such part of the principal [of one part] as the Trustee may in his discretion deem necessary for the comfort, support, education and/or happiness" until he reaches the age of 45 years, at which time the part held for him was to be turned over to him free of all trusts. If the son died before reaching the age of 45 years leaving issue him surviving, his share was to be held for his issue in equal shares, with right of survivorship, "on the same terms and with the same discretion as to payment of income and principal" as provided for the son. If the son died before reaching the age of 45 years without issue, then one-half his share was to be held for the son's wife, she to receive "such part of the income and such part of the principal as the trustee may see fit until she reaches the age of 50 years, at which time she shall receive the fund then held for her free of all trusts." The other part was to be held in trust for petitioner's daughter. If no wife or issue survived the son, then his entire share was to be held for the daughter and her issue, and/or husband, for whom one-half of the trust estate at the death of the wife was to be held on the same terms and with the same discretion in the trustee as to payment of income and principal as provided for the son, his issue, and/or wife. The trust instrument also contained a spendthrift clause. The powers of the trustee as contained in the trust instrument are set forth in our findings of fact and need not be here repeated, except to point out that the trustee, among other things, was empowered "to loan money or property to any person, trust or corporation on such terms

as he may see fit; to keep any or all securities or other property in the name of some other person or corporation with a power of attorney for their transfer attached, or in his own name without disclosing his fiduciary capacity; to determine what shall be charged or credited to income and what to principal, notwithstanding any determination by the courts; to determine who are the distributees * * * and the proportions in which they shall take; * * * and generally to do all things in relation to the trust fund which the donor could do if this trust had not been executed." It also provided that "All such divisions and decisions made by the Trustee in good faith shall be conclusive on all parties at interest." Under the trust instrument petitioner lodged in himself as trustee, "a dominion over the trust property far in excess of nominal fiduciary powers under traditional chancery concepts." *Stockstrom* v. *Commissioner, supra.*

The petitioner's principal argument is that under the trust instrument neither discretion nor powers were granted to or vested in the petitioner as an individual, but, on the contrary, the powers of management and the discretionary powers to accumulate or distribute income or corpus were vested in and granted to him in his fiduciary capacity as trustee, and that if petitioner had distributed more income than necessary or proper or more corpus than necessary to the life beneficiary he would have been subject to legal action by the remainder-man. "Equity courts will go no farther than to protect the beneficiaries in the enjoyment of the rights actually granted to them by the terms of the trust agreement." *Gordon M. Mather,* 5 T. C. 1001. The decision of a trustee in the exercise of his discretion can not be overridden by the courts unless the trustee decides arbitrarily, capriciously or in bad faith. *Holmes* v. *Welch,* 49 N. E. (2d) (Mass.) 461, 465; *Sears* v. *Childs,* 35 N. E. (2d) (Mass.) 663, 669; *Berry* v. *Kyes,* 22 N. E. (2d) (Mass.) 622, 625; and *Dumaine* v. *Dumaine,* 16 N. E. (2d) (Mass.) 625. In the latter case the Supreme Judicial Court of Massachusetts, referring to a discretionary power granted to the trustee to determine whether property or money earned by him was principal or income, stated:

* * * The discretion conferred is not an empty one. It confers an important responsibility to make a determination which, if honestly exercised, calls for no revision by the court. Am. Law Inst. Restatement: Trusts, §§ 187, 233.

The question involved was whether the trustee had the right thereunder to distribute to himself as life tenant a profit derived during the year 1938 as the result of selling certain shares of stock, a part of the trust property, at a price over and above cost. Although the trustee was one of two life beneficiaries, to each of whom so much of the net income as the trustee in his absolute and uncontrolled discretion should determine was payable, and the balance, if any, in any year was to become a part of capital, and although the trust estate was to be trans-

ferred upon the death of the survivor of the two life beneficiaries to another trust, and although the local rule of allocation was well settled to the contrary, the court held that the trustee had the power to classify the gain as income and distribute it to himself as beneficiary. Thus, the trust herein being governed by Massachusetts law, the petitioner as trustee had a very wide latitude indeed in the exercise of his fiduciary discretion.

The powers of management and control given to the trustee under the trust instrument herein are equally as broad and inclusive as those conferred upon the trustee in *Miller* v. *Commissioner* (C. C. A., 6th Cir.), 147 Fed. (2d) 189; *Stockstrom* v. *Commissioner* (C. C. A., 8th Cir.), 148 Fed. (2d) 491; *Funsten* v. *Commissioner* (C. C. A., 8th Cir.), 148 Fed. (2d) 805; *Edison* v. *Commissioner* (C. C. A., 8th Cir.), 148 Fed. (2d) 810; *Anna Morgan*, 5 T. C. 1089. In all such cases the grantors were named as trustees. In all such cases the income of the trust was held to be taxable to the grantor-trustee.

In *Donald S. Black*, *supra*, cited by petitioner, the Commissioner contended that the income of the trust was taxable to the taxpayer-trustee because under the trust instrument the trustee was given full and plenary powers of investment such as he would possess if he were the absolute owner there in his individual capacity. As to this contention the Tax Court stated (5 T. C. 759):

* * * There is no such wording or phraseology as that the trustee was given full and plenary powers of investment such as he would possess if he were the absolute owner of the "trust estate in his private individual capacity." Such language was contained in the trust instruments involved in the *Stockstrom* and *Edison* cases, *supra*, relied on by the respondent, and in *Miller* v. *Commissioner*, (C. C. A., 6th Cir.), 147 Fed. (2d) 189; and *Funsten* v. *Commissioner* (C. C. A., 8th Cir.), 148 Fed. (2d) 805.

Thus the *Black* case is not controlling herein, for the trust instrument herein does give the petitioner as trustee as full powers over the trust estate as he would have had if the trusts had not been executed. No such extensive powers were granted by the trust instrument to the grantor trustee in *Herbert T. Cherry*, *supra*, cited by petitioner.

It has been stated that income of a trust is not taxable to the grantor under section 22 (a) merely because he has made himself trustee, with broad power in that capacity to manage the trust estate. *Commissioner* v. *Branch*, (C. C. A., 1st Cir.), 114 Fed. (2d) 985. However, in that case, it was pointed out that the grantor had "stripped himself of all command over the income for an indefinite period." In that case the income of the trust was payable to the wife of the grantor-trustee during her lifetime for her separate use, "free whenever she shall be covert from all control and engagements of her husband." In *White* v. *Higgins* (C. C. A., 1st Cir.), 116 Fed. (2d) 312, it is stated:

* * * But on the other hand, taxation of the income to the grantor is not excluded by the mere fact that the grantor holds legal title to the corpus as

trustee. His powers as trustee, in conjunction with other provisions of the trust instrument, may give him a dominion over the corpus substantially equivalent to "full ownership." *Helvering* v. *Clifford* makes this clear.

In *David Small, supra*, cited by petitioner, the trust agreement provided that any income not used for or applied to the support, maintenance, education, and appropriate luxuries of the minor beneficiaries was to be accumulated and paid to the minor upon his or her attaining the age of 21 years. Herein it was in the discretion of petitioner as trustee to withhold all trust income from his wife during her entire life and, upon the death of his wife, from his two children until they each reached the age of 45 years. In *Estate of Benjamin Lowenstein, supra*, the income of the three trusts created by the decedent-grantor was payable to the respective life beneficiaries, who were the adult children of the grantor. It would serve no useful purpose to discuss all the cases cited by the parties.

The petitioner, in addition to his broad and extensive powers of management, including the right "generally to do all things in relation to the trust fund which the donor could do if this trust had not been executed," retained absolute discretion over the control of the distribution of income and principal. He could distribute all the income or any portion of it, as well as principal, to the primary beneficiary if he thought it conducive to her comfort and happiness, or he could withhold all the income and principal from her and accumulate it for distribution to the remaindermen. He had the "right to 'spray' the net income of the trust as between the primary beneficiary and the remaindermen within the thought of *Commissioner* v. *Buck*, 120 Fed. (2d) 775, and more particularly within the decision in *Stockstrom* v. *Commissioner*, 148 Fed. (2d) 491, affirming 3 T. C. 255." *Ben F. Hopkins, supra.* See also *Edison* v. *Commissioner*, 148 Fed. (2d) 810; certiorari denied, 326 U. S. 721; *Foerderer* v. *Commissioner*, 141 Fed. (2d) 53.

In our opinion the absolute power of the petitioner over the distribution of the income and principal of the trust or accumulations thereof for the remaindermen, together with his other broad and extensive powers, gave him a dominion over the trust corpus substantially equivalent to full ownership, and the respondent did not err in taxing the income of the trust for the taxable years to the petitioner under the provisions of section 22 (a).

(2) The Commissioner, in computing the tax liability of the petitioner for the taxable years included in his taxable income distributions received by him from the Los Mochis trust. The explanation given by the Commissioner for such adjustment is as follows:

It is held that the income received by Mr. Jones from the Los Mochis trust does not represent compensation for services rendered outside the United States and is taxable, therefore, under the provisions of section 22 (a) of the Internal

Revenue Code and the corresponding provisions of the Revenue Acts of 1936 and 1938.

On brief he states the question to be whether the amounts received by petitioner "from an employee's trust represented additional compensation for services rendered by him to his employer or ordinary trust income." He does not dispute the fact that the creation of the Los Mochis trust was for the purpose of awarding the "key" employees named therein as beneficiaries for their faithful and efficient services rendered to the corporation, but contends that each of such employees became possessed at the time the trust was created of a definite and fixed property interest, the value of which interest constituted his compensation when received, and that the income from such property interest thereafter can not be considered as compensation paid by the corporation, but, on the contrary, is ordinary trust income.

The petitioner contends that the Los Mochis trust falls in the category of an "employees' trust," that it is a profit-sharing plan established for the purpose of providing additional incentive compensation for the employees of United Sugar, that the amounts received by the petitioner were earned income under section 25 (a) (4) (A) of the Internal Revenue Code, and, therefore, petitioner, being a nonresident citizen of the United States, they were excludible from income under section 116 (a) of the Internal Revenue Code (in effect in 1939) and corresponding sections of the Revenue Acts of 1936 and 1938. Those sections, so far as pertinent, are set forth in the margin.[1]

The Los Mochis trust was created by Compania Mexicana, which company concededly was not the employer of petitioner or other beneficiaries of the trust. Most of the shares of United Sugar were contributed to the trust by Compania Mexicana. In substance, these shares were contributed by Johnston, who was the sole stockholder of Compania Mexicana. Neither was Johnston the employer of petitioner

---

[1] SEC. 25. CREDITS OF INDIVIDUAL AGAINST NET INCOME.

(a) CREDITS FOR NORMAL TAX ONLY.—There shall be allowed for the purpose of the normal tax, but not for the surtax, the following credits.against the net income.

\*　　　　\*　　　　\*　　　　\*　　　　\*　　　　\*　　　　\*

(4) EARNED INCOME DEFINITIONS.—For the purposes of this section—

(A) "Earned income" means wages, salaries, professional fees, and other amounts received as compensation for personal services actually rendered, but does not include any amount not included in gross income, nor that part of the compensation derived by the taxpayer for personal services rendered by him to a corporation which represents a distribution of earnings or profits rather than a reasonable allowance as compensation for the personal services actually rendered. \* \* \*

SEC. 116. EXCLUSIONS FROM GROSS INCOME.

In addition to the items specified in section 22 (b), the following items shall not be included in gross income and shall be exempt from taxation under this chapter:

(a) EARNED INCOME FROM SOURCES WITHOUT UNITED STATES.—In the case of an individual citizen of the United States, a bona fide nonresident of the United States for more than six months during the taxable year, amounts received from sources without the United States (except amounts paid by the United States or any agency thereof) if such amounts would constitute earned income as defined in section 25 (a) if received from sources within the United States; but such individual shall not be allowed as a deduction from his gross income any deductions properly allocable to or chargeable against amounts excluded from gross income under this subsection.

or other beneficiaries of the trust. United Sugar was the employer and it contributed nothing to the trust. It made certain payments to the trust, it is true. However, such payments were not made to the trust as compensation for services rendered to it by the beneficiaries of the trust, but as dividends on its shares held by the trust.

The consideration stated in the trust agreement for the transfer by Compania Mexicana of 33,426 shares of United Sugar to the trust is "One Dollar" and "faithful and loyal services heretofore rendered by the beneficiaries hereinafter named." Each beneficiary belonging to the first group named, including the petitioner, was to receive a trust certificate covering the shares set aside for him, which certificate was to certify that "such beneficiary, his heirs, executors, administrators and/or assigns will be entitled to the shares above specified, as well as to the income from the same, in the manner and form and at the times provided for" in the declaration of trust. Under the declaration of the trust it was the duty of the trustees to distribute the dividends received by it from United Sugar to the beneficiaries, applicable to the number of shares as represented by the trust certificates held by each beneficiary. The necessary expenses and a reasonable amount for anticipated expense were to be paid and reserved from the unallocated income. Such distribution was to continue for 20 years, at the end of which period it was the duty of the trustees to distribute, assign, and deliver to the holders of the trust certificates the shares represented by the same. In so far as the first group of beneficiaries is concerned, the trust was merely the legal holder of the shares and the distributor of the dividends received from United Sugar for a term of 20 years. The trust certificates, representing an interest in the trust, were the property of the holders thereof with which they could deal as freely as they could with any other property owned by them. There were no limitations or restrictions as to their transfer in the trust agreement and neither the distributions by the trust of dividends when and as received nor the distributions of the shares of United Sugar as represented by the trust certificates at the end of 20 years were dependent upon the continued employment by United Sugar of the beneficiaries or the rendering of any services by them to the corporation during such 20 years. The certificate ran to the beneficiary, and his assigns, and upon the death of any beneficiary holding and possessed of his trust certificate the trust certificate became a part of his estate and the distributions of dividends received by the trust from United Sugar were payable to his estate. This was done in 1939 in the case of Hudson and Sherman Johnston. In the case of Ignacio Gastelum, who died in 1933, and in the case of Hudson, who died in January 1939, their certificates were transferred to their respective estates.

This probably was also done in the case of Sherman Johnston, who died in August 1939, and Hassard, who died in 1942.

It is true that petitioner testified that he, as well as the other beneficiaries of the trust, assured Johnston, prior to the creation of the trust, that they intended to continue with United Sugar during the term of the trust or until death or retirement; that as a result of the establishment of the trust his monthly salary and the monthly salary of the other beneficiaries payable by United Sugar were reduced "in connection with the new plan, under which a large part of the compensation of the key men was to come from earnings of the company"; that the key employees could have earned a substantially greater monthly salary if they had left the employment of United Sugar, and that, in fixing the monthly salaries at the time and after the establishment of the trust, the distribution which the employee would be entitled to receive from the trust would be taken into consideration as a factor in determining his compensation. This testimony, however, is not determinative in view of the clear and unambiguous language of the trust agreement, giving to the beneficiaries in the first group a vested interest *in praesenti*. The dividends issued by the trust were payable to the beneficiaries because of their rights as beneficiaries under the trust and not as employees of United Sugar. That United Sugar was not obligated to make payments to the trust of any specified amount as salary is evidenced by the fact that in 1934 no dividends were paid and in 1938 and 1939 the dividends were less than in 1937. Furthermore, United Sugar established a so-called management fund in about 1934 to provide funds to adjust and stabilize salaries when affected by the exchange situation in Mexico or otherwise.

Petitioner argues that the present issue was squarely presented in *William J. R. Ginn*, 47 B. T. A. 41. In that case the parties involved agreed that the fund under consideration was a pension trust within the meaning of section 165, which is not the situation herein. It was contended by the taxpayer that aliquot amounts of contributions of certain partners individually, bequests from two estates, and the amount undrawn by deceased employees were gifts to the fund, and that this gift characteristic followed through to the receipt of the pension by individual members of the fund and hence they were not taxable income to them. It was therein determined that the employee participants in the pension fund were taxable on amounts received in the taxable year in excess of their contributions to the fund and that the amounts so taxable, other than accretions attributable to the employees' contributions, were earned income for purposes of computing the earned income credit.

*Joseph W. Frazer*, 4 T. C. 1152 (on appeal, C. C. A., 6th Cir.), cited by the petitioner, is distinguishable on the facts and is also not applicable. In that case the employer corporation paid a percentage

of its earnings to two trust funds in which selected officers and executives could participate by the purchase of shares of beneficial interest. The earnings were not paid as dividends, but to enable the trusts to purchase shares of the employer corporation. The contributions were held in effect to be payment of additional compensation and deductible as such by the corporation. Contributions to the fund by the corporation and profits from the sale of securities were to be credited to an account called surplus B. Such contributions were to be invested in common shares of the employer corporation and other temporary investments. The income therefrom was to be placed in an account called surplus A, from which distributions were to be made as the trustees should determine and, upon the death or resignation of any member upon the surrender of his certificates for shares of beneficial interest, he was to receive a distribution from the funds, the determination of the amount of which, and whether in cash or securities, was in the absolute discretion of the trustees. By the terms of the trust indentures the certificates for shares of beneficial interest were not assignable. All that the participating members could do with them to receive anything from the trusts was to surrender them to the trustees within one year from date of resignation. The taxpayer, a participating member of both funds, resigned from his position in 1939 and upon the surrender of his certificates he received a total of $60,553.77 from the two trusts. In 1939 he reported the receipts as a capital gain, only 50 percent of which was includible in gross income. It was stipulated that the taxpayer had recovered his entire investment in each fund through nontaxable distributions prior to 1939. The Commissioner determined that the entire amount was includible in taxpayer's gross income as compensation for services rendered. It was held that the entire amount received by taxpayer was includible in gross income except the small portion thereof consisting of certain income upon which the trust had been taxed, since income already taxed to a trust is not taxable when distributed to the beneficiary.

No doubt the Los Mochis trust was established to induce the beneficiaries, particularly those included in the first group named, to remain in the employ of United Sugar and as an incentive to greater interest and endeavor on their part in behalf of the company, upon the theory that the amount of the earnings of the company would be dependent upon their continued efforts and services, and that they would benefit by a distribution of such earnings. However, under the plan as evolved and established, they received a distribution of such earnings not as employees in payment of compensation for services rendered in the year the distributions were received, but in substance and effect as shareholders in payment of dividends declared on shares of stock held by them. That the dividends on the shares

allotted to each was routed through the trust is not important. Section 116 (a) is therefore not applicable.

The determination of the respondent on this issue is approved.

*Decision will be entered for the respondent.*