Aben E. Johnson v. Commissioner.
Johnson v. Commissioner
Docket No. 5520.
United States Tax Court
1946 Tax Ct. Memo LEXIS 224; 5 T.C.M. (CCH) 241; T.C.M. (RIA) 46076; April 8, 1946
Alfred E. Lindbloom, Esq., and Laurence A. Masselink, Esq., for the petitioner. A. J. Friedman, Esq., for the respondent. HARRON Memorandum Findings of Fact and Opinion HARRON, Judge: Respondent has determined deficiencies in income tax for the years 1940 and 1941 in the respective amounts of $597.83 and $33,758.15. Certain adjustments made by the respondent are accepted as correct *225 by petitioner, as follows: 1940: Disallowance of a deduction of $6,957.99 for bad debts. 1941: Deduction of $1,100 for loss on the sale of a furnished residence; deduction of $3,031.12 for a loss from a business venture. Respondent confesses error in adding to petitioner's 1941 income dividends in the amount of $12,274.70 on 24,549.4 shares of Hastings Manufacturing Company stock. There must be a recomputation under Rule 50 of the deficiency for 1941 to give effect to the concessions agreed to by the parties. There remains in issue one general question which relates to four trusts for the benefit of petitioner's children and one trust for the benefit of his wife. The question is whether the income of the five trusts is taxable to petitioner. Petitioner filed his returns with the collector for the district of Michigan. The record consists of oral testimony, exhibits, and a stipulation of certain facts. The stipulation of facts is adopted as part of the findings of fact and is incorporated by reference in the findings of fact. Findings of Fact Petitioner is a resident of Hastings, Michigan. During all times material he and his wife resided together. The name of petitioner's *226 wife is Anna M. Johnson. They have four children whose names, birth dates, and ages in October 1939 were as follows: Age When
Birth
Trusts
Date
Created
Barbara D. Johnson
6/12/16
23
Stephen I. Johnson
2/ 2/20
19
Agnes E. Johnson
5/25/22
17
Aben E. Johnson, Jr.
2/13/27
12
At the time of the trial of this case, petitioner was 61 years old. He was 56 years old at the time he created the trusts mentioned hereinafter. Hastings Manufacturing Company is a Michigan corporation. It was organized in 1929. In engages in the business of manufacturing piston rings for the replacement trade. Originally three classes of authorized stock, A, B, and C, were outstanding. Prior to June 27, 1940, all of the class A stock was converted to class C stock. The articles of incorporation were amended on June 27, 1940, to authorize $1,000,000 of capital stock. As a result, the outstanding stock consisted of 351,900 shares. On November 18, 1943, the authorized stock was increased to $2,500,000 consisting of 1,250,000 shares having a par value of $2 a share. On the same date the directors declared a stock dividend of 351,900 shares. From 1929 to 1939, petitioner *227 was a vice president of the company. From December 28, 1939 through 1941 he was president. During the latter period there were seven directors, including petitioner. On October 27, 1939, petitioner created four separate trusts for the benefit of each of his children. The terms of the trust agreements were identical except for the names of the beneficiaries. On the same date, petitioner created a trust for the benefit of his wife, Anna M. Johnson. At the time of the creation of the trusts, petitioner gave 1,500 shares of the class B stock of the Hastings company to the trustees in trust for Barbara, and the same quantity of the class B stock to the trustees in trust for Stephen; 1,500 shares of the class C stock in trust for Aben, Jr.; 1,250 shares of the class C stock and 250 shares of the class B stock in trust for Agnes. He gave 1,500 shares of class C stock to the trustees of the trust for his wife. As changes were made in the authorized stock of Hastings company, the trustees received new certificates to replace the stock originally given to the trusts. After the increase of the authorized stock to $1,000,000 in 1940, each of the five trusts held 11,730 shares of stock of Hastings *228 company. After the declaration of a stock dividend in 1943, each of the five trusts held 23,460 shares of stock. On or before November 4, 1941, petitioner gave to each of his four children 5,000 shares of Hastings company stock, and 4,549.4 shares to his wife. Neither the stock nor the income from the above gifts of stock is involved in the issue to be decided. On December 31, 1940, and November 5, 1941, the stock of the Hastings company was held as follows: 12/31/40
11/5/41
shares
shares
A. E. Johnson, petitioner
51,299.2
52,847.6
The 5 trusts
58,650
117,300
Petitioner's relatives
56,516.8
99,849.6
Mrs. Johnson and the 4
children
47,698.8
Total
166,466.0
317,696.0
Other stockholders
185,434
386,104
Total
351,900
703,800
The "other stockholders" referred to in the above schedule included thirty-three employees of Hastings company. In 1940 and 1941 the voting power of the Hastings company stock was held as follows: 1940
1941
A. E. Johnson, petitioner
14.58%
9.50%
The 5 trusts
16.67%
16.67%
Mrs. Johnson and the 4 chil-
dren
6.65%
Others
68.75%
67.18%
100.00%
100.00%
During 1940 and 1941 *229 the trustees of the five trusts received for each trust dividends on the Hastings company stock in the total sum of $900 and $7,038, respectively. It is provided in each trust indenture that the trustees shall purchase annuity contracts from insurance companies in the name of the beneficiary of each trust sufficient to yield $250 per month income for the beneficiary. At the end of 1941, payments had been made on such annuity contracts for each of the trusts, but in no instance had there been purchased sufficient amounts of annuity contracts to yield the monthly income required and specified. During the period 1939 to 1945 income, expenditures for insurance, and expenses of the trusts were as follows: Expended for
Trust
Name of Trust
Income
annuities
Expense
Stephen I. Johnson
$29,903.24
$16,676.68
$2,019.39
Barbara D. Von Reis
29,792.40
17,777.60
1,924.03
Aben E. Johnson, Jr.
29,893.47
16,500.12
2,004.59
Agnes E. Blacklidge
29,707.00
16,628.80
1,978.94
Anna M. Johnson
29,935.60
6,769.20
1,987.45
Petitioner, as the settlor, executed five trust agreements on October 27, 1939. The trustees under all of the trusts were the same persons, *230 Aben E. Johnson, petitioner, Don A. Siegel, and Evelyn J. Thomas. All of the trusts contain the same general provisions relating to the use of income, the accumulation of income, the separation of accumulations of income from principal, the powers and duties of the trustees, the termination of the trusts by the trustees to accelerate the distribution of a trust to a beneficiary, the power of the settlor to remove a trustee, the appointment of a successor trustee by surviving trustees. The trust agreements for the benefit of petitioner's wife and his daughter, Barbara, have certain similarities, and the trust agreements for the benefit of Stephen, Aben, Jr., and Agnes, children of petitioner, are substantially the same. In all of the trusts, the trustees are to use one-half of the income of a trust and one-half of the proceeds from the sale of any shares of Hastings company stock to purchase an annuity contract or annuity contracts for the beneficiary of a trust in an amount or amounts which in toto will provide the beneficiary with a monthly income for life of $250, such monthly payments to begin when the beneficiary reaches 45 years of age, in the trusts for the four children. In *231 the trust for the benefit of petitioner's wife, the monthly payments are to begin when she reaches the age of 55 years. The trust for the benefit of petitioner's wife shall continue for the duration of her life, unless terminated by the trustees during her lifetime under clause 6 of her trust, in which event the principal and income is to be distributed to her. The trusts for the four children make the same provision for termination of each trust. Each trust is to terminate when the beneficiary becomes 40 years old, unless terminated by the trustees before the beneficiary attains that age, under clause 9 of each trust, in which event the principal and income is to be distributed to the beneficiary. Under all of the trusts, investments by the trustees are restricted to the purchase of annuity contracts until annuity contracts have been purchased in a principal amount sufficient to yield the beneficiary $250 per month for life with payments beginning at the age of 55, in the case of the wife, and 45 in the cases of the children. Thereafter, the trustees may make investments in other ways in their sole discretion. In the trust for the wife it is specified that annuity contracts *232 purchased for her shall provide that upon the death of the beneficiary of the annuity contract, the annuity - principal and any payments therein provided - shall go to the children of Aben E. Johnson, petitioner, share and share alike, the issue of any deceased child to take his parent's share. In the trusts for the four children, it is specified that annuity contracts purchased for them shall provide that upon the death of the beneficiary of the annuity contract, the annuity-principal and any payments therein provided, shall go to the other children of Aben E. Johnson, petitioner, share and share alike, if the deceased beneficiary dies without legitimate issue or legally adopted children. If the deceased beneficiary dies leaving issue, the annuity fund shall go to such issue, share and share alike. The provisions for distributing the trust estates upon the death of the beneficiaries of the trusts are as follows: Trust for petitioner's wife, Anna May Johnson. Her trust is to be distributed to the surviving children of Aben E. Johnson, share and share alike, or to the issue of a deceased child, taking the parent's share by right of representation, provided that if any trust be in *233 existence for a child or its issue, which was created by Aben Johnson, then distribution shall be made to such trust. Trusts for the four children. If a beneficiary dies before attaining 40 years of age, and leaves surviving legitimate issue or adopted children, the trust estate shall go to such survivors. But if the beneficiary of a trust dies without leaving any surviving issue or adopted children, the trust estate shall go to the other surviving children of Aben E. Johnson, share and share alike, or to the trustee of any trusts in existence for their benefit created by Aben E. Johnson. The following provision appears in the trust for petitioner's wife: 1. (b) The Trustees have the right to pay the whole or any part of the income to the Beneficiary for her maintenance and support if any such payment is, in their opinion, required, and the provisions of Paragraph 1 (a) requiring the Trustees to purchase an annuity or annuities for the Beneficiary shall not apply except as to the income remaining after such payments for her maintenance, and support have been so made. When they have been made, then the provisions of Paragraph 1 (a) shall apply and that clause shall be interpreted *234 to mean that one-half (1/2) of the income remaining after such payment for maintenance and support shall be used to purchase said annuity or annuities. But such annuity or annuities to the amount of Two Hundred Fifty ($250.00) Dollars monthly having been purchased, then the Trustees may, in their discretion, pay over to the Beneficiary all or any part of the income then remaining. The trust for a daughter, Barbara, provides as follows: 1. (b) The Trustees have the right to pay the whole or any part of the income to the Beneficiary for her maintenance, support and education if any such payment is, in their opinion, required, and the provisions of Paragraph 1 (a) requiring the Trustees to purchase an equity or annuities for the Beneficiary shall not apply except as to the income remaining after such payments for her maintenance, support and education have been so made. When they have been made, then the provisions of Paragraph 1 (a) shall apply and that clause shall be interpreted to mean that one-half (1/2) of the income remaining after such payments for maintenance, support and education shall be used to purchase said annuity or annuities. But such annuity or annuities t o the *235 amount of Two Hundred Fifty ($250.00) Dollars monthly having been purchased, then the Trustees may, in their discretion, pay over to the Beneficiary all or any part of the income then remaining. The four trusts for the four children provide as follows: 4. The Trustees shall have the power to retain any part of said net income not paid, as herein provided, to Beneficiary, for reinvestment by the Trustees as a part of the trust fund, but any income so invested, and the assets in which such income is so invested, shall retain its character as distributable income hereunder. 5. (a) When the Beneficiary arrives at the age of thirty (30) years, (the trust not having been terminated) the Trustees shall, if the 1500 shares, or any part thereof, then remain in the trust, pay to the Beneficiary one-half (1/2) of the corpus and of the accumulations, if any, and shall hold the remaining one-half (1/2) until the Beneficiary arrives at the age of forty (40) years. Thereupon the Trustees shall pay to the Beneficiary the remainder of the trust fund, both the corpus and the accumulations, and the trust shall then cease. (b) If, when the Beneficiary arrives at the age of thirty (30) years (the *236 trust not having been terminated), the 1500 shares of stock have been sold and the annuity hereinbefore provided for shall have been purchased, then the Trustees, on the Beneficiary reaching the age of thirty (30) years, shall pay to the Beneficiary one-half (1/2) of the balance in the trust, both corpus and any accumulations, and shall hold the remainder until the Beneficiary reaches the age of forty (40) years, when they shall pay the remainder of the trust fund, both corpus and accumulations, to the Beneficiary, and the trust shall then cease. The three trusts for Stephen, Aben, Jr., and Agnes contain the following provisions: 1. (b) If the Settlor dies before the Beneficiary becomes twenty-one (21) years of age, the Trustees shall have the power to pay the whole or any part of the net income to the Beneficiary for his maintenance, support and education, and until such maintenance, support and education is so provided for, the Trustees are not required to purchase the annuity or annuities provided for in Paragraph 1 (a) above, and the provisions of said Paragraph 1 (a) for the use of one-half (1/2) of the income for the purchase of the annuity or annuities shall be construed *237 to mean one-half (1/2) of the income remaining after provision has been made for such maintenance, support and education of the Beneficiary. After the Beneficiary becomes twenty-one (21) years of age, the Trustees shall have the power to pay the whole or any part of the net income to the Beneficiary for his support, maintenance and education and if any part of the income is so required, it shall be devoted to that purpose, but thereafter the provisions of Paragraph 1 (a) shall apply and one-half (1/2) of the balance of the income remaining shall be used to purchase the annuity or annuities as in said Paragraph 1 (a) provided. When the provisions for maintenance, support and education have been made for said Beneficiary who has so become twenty-one (21) years of age and provisions have also been made for the purchase of the annuity or annuities as directed in Paragraph 1 (a), then the Trustees shall have the right, in their discretion, to pay the whole or any part of the remaining income to the Beneficiary and they shall have such right whether the Settlor be then deceased or not. Each of the five trust agreements contain the following provision, which is clause 8 in the trust for *238 the children and clause 5 in the trust for the wife: 8. This is a gift in presenti, in trust, and is absolute. The Settlor has no power to revoke or modify this trust or to interfere in any way with the powers, duties or discretion of the Trustees in the investment, payment, or distribution of the corpus or income, or in any other matter whatever. The Settlor may, however, at any time hereafter, make additional gifts of securities, cash or other property, in and to this trust, which additional gifts, if any, shall be subject to all the terms hereof. Each of the five trust agreements contain the following clauses: The Settlor has the right to remove any Trustee hereunder and to appoint a new Trustee in his place and stead, but this power of removal of a Trustee is reserved solely for the good and safety of the trust estate and shall not in any way affect the irrevocability of the gift or gifts hereunder, nor shall it in any way impair the powers or the discretion of the Trustees hereunder. * * * * *
A majority of the Trustees or their successors in trust shall have full power to decide any question arising hereunder, and to transact any business of the trust, in person *239 or through an agent acting under a power of attorney as aforesaid, and to exercise any power hereunder vested in the Trustees. In the event of the death, resignation or disqualification for any cause of any of the Trustees herein named or their successors, the surviving Trustees shall appoint a successor to fill the vacancy, and such appointment shall be evidenced by an instrument in writing signed by said surviving Trustees. * * * In the case of the death of petitioner, while he is one of the trustees, his wife is to succeed him, and upon her death one of the children shall succeed her as one of the trustees, but one of the children is not to be a trustee of a trust for himself if other children are living. (This is the substance of the provision for successor trustees.) During the year 1940, none of the income of the trusts for Stephen, Barbara, Aben, Jr., and Mrs. Anna Johnson was used for the support and maintenance of the beneficiaries of those trusts. Petitioner provided for the maintenance of his wife and family in 1940 and 1941. Some of the income of the four trusts for the children has been used as premium payments to purchase insurance policies on the lives of the children. *240 Other children are the beneficiaries of the policies. Petitioner cannot alter, amend, or revoke any of the five trusts nor vest the corpora of the trusts in himself. None of the principal or income of the trusts has been used for the payment of premiums upon insurance policies on petitioner's life. Petitioner has not received any of the income or principal of any of the trusts. Petitioner was one of the three trustees of each trust in 1940 and 1941. On or before March 15, 1941, and 1942, fidiciary income tax returns for the calendar years, 1940 and 1941, were filed by the trustees of the five trusts, and the dividends referred to above, which had been paid to said trustees, were reported and accounted for on said returns. Individual income tax returns for the year 1941 were filed by or on behalf of each of petitioner's children and his wife on or before March 15, 1942, and the 1941 dividends paid on the stock standing in their names were reported and accounted for on said individual returns. The income taxes shown due on each of said returns were paid. In his individual 1940 and 1941 Federal income tax returns, petitioner did not report or include in gross income any of the *241 dividends paid by Hastings Manufacturing Company on the stock transferred to the five trusts in 1939, or to his wife and four children in 1941. Opinion The four trusts for the children are to terminate when each child becomes 40 years of age. Respondent's contention that petitioner is taxable on the income of these trusts is not based upon the provisions of the trusts relating to the use of income, or the devolution of the corpora of the trusts. Respondent's argument will be set forth hereinafter. But it is pointed out at the outset that the question is controlled by Alma M. Myer, 6 T.C. 77, unless petitioner retained or received economic benefits through the trusts so that for special reasons the doctrine of Helvering v. Clifford, Jr., 309 U.S. 331, controls the question. The trust for the wife of petitioner is to extend for the duration of her life. She is to receive the benefit of the income of the trusts and the income provisions of annuity contracts purchased by the trustees under her trust. Petitioner cannot receive the principal or the income of his wife's trust. The question presented by this trust is controlled by Commissioner v. Branch, 114 Fed. (2d) 985; *242 Frederick Ayer, 45 B.T.A. 146, 153; David Small, 3 T.C. 1142, and under these cases petitioner is not taxable on the income of his wife's trust, unless, as stated above, petitioner retained or received economic benefits through the trusts so that the rule of the Clifford case applies to this trust. Respondent, on brief, contends only that petitioner is taxable on the income of the five trusts under section 22(a) of the Internal Revenue Code. It is pointed out that none of the trust income of any of the trusts was used in the taxable years to discharge the grantor's legal obligation to support his wife and his minor children. See E. E. Black, 36 B.T.A. 346; David Small, supra, p. 1149; and section 134 of the Revenue Act of 1943, amending section 167 of the Internal Revenue Code. The question is limited to petitioner's liability for tax under section 22(a). Respondent does not advance any argument that any part of the income of the trusts is taxable to petitioner under section 134 of the 1943 Act. The trusts provide that there shall be three trustees. Petitioner has the power to remove *243 a trustee and appoint a new trustee in his place. This power is stated to be a power in the settlor solely for the good and safety of the trust estate, and shall not in any way affect the irrevocability of the gifts to the trusts, nor shall it in any way impair the powers or discretion of the trusts. Petitioner was one of the three trustees in the taxable years. In 1942 he resigned as a trustee of all of the trusts. Even if he is not a trustee he has the right to remove any trustee and appoint a new trustee. We must assume the exercise of the power set forth in this clause of the trusts with all of its consequences. And it is considered along with other powers, if any, which petitioner holds under the trusts which give him elements of control over the trusts. Respondent's entire argument is directed at the relation of petitioner to the Hastings company, at his functions in the business thereof, at his personal stock holdings, and at what is alleged to be his desire to retain control over the Hastings company stock which he gave to the trusts. Respondent's argument derives almost all of its fervor, rather than strength, from the provision in each trust that the trustees may vote any *244 stock in the trusts in person, "or by proxy," (Italics added). It is a fact that the trustees gave proxies to petitioner in the taxable years to vote the Hastings company stock in the trusts during the taxable years when petitioner was a trustee, and in a subsequent year when he was not a trustee. The power of the settlor of a trust to vote trust stock for a trust may, under certain circumstances, give him economic benefits, personally. Certainly, where there are other stockholders who would have a controlling vote instead of such settlor of a trust were it not for the voting power which he held through voting trust stock, the situation would require close scrutiny to determine whether the taxpayer, through trusts holding stock given by him, maintained and retained for himself economic advantages and benefits which he had before creating trusts. In some instances, the power to vote stock, if it is the only factor favorable to the grantor of a trust, is not sufficient to bring the rule of the Clifford case to bear upon the tax question. See the dissenting opinion of Justice Reed in Helvering v. Fuller, 310 U.S. 69. See also Cushman v. Commissioner, 153 Fed. (2d) 510, *245 (C.C.A.-2, January 14, 1946). But, where, as here, a taxpayer prior to the creation of a trust did not own a controlling block of stock in a corporation, the stock of which he gives to a trust, there is much less ground for construing trust provisions against the taxpayer where there remains in him a possible exercise of the right to vote the stock he has given to the trusts. See John Stuart, 2 T.C. 1103. And, all the other provisions of the trust agreement become pertinent, for without other powers of control over the corpus and income of a trust, the isolated circumstance that the settlor of the trust may be allowed to vote the trust stock may not amount to much, in a realistic and practical sense, to the settlor of the trust. In many cases involving trusts of the type involved here, the settlor has reserved the right to vote stock given to the trust, or the trustees were allowed to give him proxies to vote the stock, but in view of other terms of the trusts, such provisions have not brought the trusts within the rule of the Clifford case. We do not undertake to illustrate the above statement by citations because the situation here is not one which requires the close *246 scrutiny for which respondent argues. The argument of respondent is rejected here, as it was in Donald S. Black, 5 T.C. 759, 767. Petitioner voting the stock owned by himself and the stock owned by the five trusts could vote only about 31.25 percent of all of the Hastings company stock in 1940, and only about 26.17 percent in 1941. And when we take into consideration all of the provisions of the trusts, particularly those relating to the administration of the trusts, and all of the circumstances relating to the creation and operation of trusts, as we must do, Helvering v. Clifford, supra, we are not able to conclude that the five trusts in question were created or administered for the economic benefit of petitioner. It is held, therefore, that petitioner is not taxable on the income of the five trusts in the taxable years, and that respondent's determinations under the issue presented are reversed. Decision will be entered under Rule 50.