Gordon M. Mather, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 5591. Promulgated October 30, 1945.

*H. A. Mihills, C. P. A.*, for the petitioner.
*Thomas F. Callahan, Esq.*, for the respondent.

#### OPINION.

Smith, *Judge*: This proceeding involves income tax deficiencies for 1940 and 1941 in the respective amounts of $36,939.12 and $28,237.24. The question for determination is whether petitioner is taxable in 1940 and 1941 on the income of four trusts which he had previously established for the benefit of four of his infant children. Two other minor issues raised in the pleadings have been settled by stipulation. The facts pertaining to the issue in controversy have all been stipulated.

Petitioner is a resident of Perrysburg, Ohio. His income tax returns for 1940 and 1941 were filed with the collector of internal revenue for the tenth district of Ohio, at Toledo.

Prior to 1940 petitioner created four separate trusts, one each for the benefit of four of his minor children, naming the Summit Trust Co., Toledo, Ohio (predecessor to the Toledo Trust Co., Toledo, Ohio), trustee of each trust. The trust agreements were identical except as to dates of execution, property conveyed to the trustee, and beneficiaries. The designation of the trusts in the records of the trustee, the names of the beneficiaries, the dates of their birth, and the dates of the execution of the trusts were as follows:

| Designation of trust | Name of beneficiary | Date of birth of beneficiary | Date of execution of trust indenture |
|---|---|---|---|
| Mather Trust #36 | Rathbun F. Mather | Jan. 15, 1920 | June 15, 1922 |
| Mather Trust #37 | George Mather | July 7, 1921 | June 15, 1922 |
| Mather Trust #49 | Adele Mather | May 7, 1923 | Dec. 31, 1923 |
| Mather Trust #131 | Catherine Mather | Nov. 27, 1924 | July 1, 1925 |

In each of the trusts the trustee was given broad administrative powers over the trust fund, including the power to invest and reinvest the trust funds either in legal trust investments under the laws of

the State of Ohio or "in such securities as the Donor may direct in writing."

Section 6, article I (the Rathbun F. Mather trust) provides in part:

Section 6. In the event that, in the opinion of the Trustee, it is desirable to sell any of the Trust Property for the purpose of protecting or conserving other Trust Property, the Trustee is empowered to sell any part or parts of the Trust Property for such purpose. This clause shall not be construed as limiting the powers conferred by any other part of this Indenture relative to sales.

It was further provided in the same section that the trustee should pay its own compensation and other carrying charges out of current income and that:

After making the payments set forth in the second paragraph of this section, or making provision therefor out of said income, the Trustee shall,—subject to the clause hereinafter inserted providing for the use of same for the maintenance and education of said beneficiary, should same become burdensome to Donor,— reinvest the balance of said income from time to time for the benefit of the beneficiary of the Trust Property hereunder until the beneficiary reaches the age of twenty-five (25) years, after which time the Trustee shall pay to said beneficiary the net income from the Trust Property, said payments to be made quarterly or oftener. When said beneficiary reaches the age of thirty (30) years, one-fourth (¼) of the Trust Property, including accretions, shall be paid and transferred to said beneficiary, and when said beneficiary reaches the age of thirty-five (35) years another one-fourth (¼) of said Trust Property and accretions shall be paid over and delivered to said beneficiary, and the balance of said Trust Property shall be paid to said beneficiary when said beneficiary reaches the age of forty (40) years, but the last distribution is not to be made if, in the reasonable judgment of the Trust Company, the interest of the beneficiary will be best conserved by a retention of the Trust Property.

After making provisions for final disposition of the trust property in the event of the beneficiary's death before termination of the trust, section 6, article I, further provides that:

The Donor retains the right to elect at any time to have all or any part of the net income used for the maintenance and education of his said son, Rathbun Fuller Mather, or said son's lineal heirs.

It was further provided in section 4, article V, that:

Section 4. All loans, sales and purchases in connection with the Trust Property heretofore made by the Trustee in accordance with the written directions of the Donor, are hereby ratified and approved in all respects.

The Trustee is authorized and directed to make all loans, sales and purchases which Donor may hereafter direct in writing.

The trustee was directed to keep adequate books of account and to hold them open for the inspection of the donor or the beneficiaries.

The stipulation of facts filed by the parties, in so far as not covered by the above findings of fact, reads as follows:

5. The trustee has from time to time purchased additional securities from income produced by the said trust properties, which have been added to the said trust properties, sometimes acting under the unlimited powers of purchase and sale contained in the said trust instruments, and sometimes acting under written

directions of the Donor-Settlor, pursuant to the provisions of Section 1 of Article I of said trust instruments.

6. No loans have ever been made by the trustee as provided for in Article V, Section 4 of said trust instruments, and none of the trust properties have ever been reconveyed to the Donor-Settlor.

7. The petitioner is amply able to support his minor children and has always done so. No occasion has arisen when the maintenance and education of any of the aforesaid beneficiaries has become financially burdensome to the Donor-Settlor.

8. During the years 1940 and 1941 the entire maintenance and education of the petitioner's children, Rathbun F. Mather, (became 21 years of age on January 15, 1941), George Mather, Adele Mather, and Catherine Mather, in a manner consistent with the petitioner's station in life, were provided by petitioner from petitioner's own separate funds. The amounts required and expended by the petitioner for such purposes during the years 1940 and 1941 were $10,147.21 and $7,670.20, respectively, as recorded in petitioner's personal books of account.

9. None of the income of any of the said trusts was reflected in the income tax return originally filed by the petitioner for the year 1940; but the income of said trusts for the year 1941 was included in the gross income shown in petitioner's income tax return filed for that year to the extent of $7,670.20. Following examination of the income tax return filed by the petitioner for the year 1940, petitioner consented to the inclusion in his gross income for that year of the income of said trusts to the extent of $10,147.21 and paid the deficiency with respect thereto on or about December 10, 1941.

10. In determining the taxable net income of the petitioner for the years 1940 and 1941, the respondent included in the petitioner's gross income the net income of the four said trusts, as follows:

| Designation of Trusts (THE TOLEDO TRUST COMPANY TRUSTEE) | Amounts of trust income included | |
|---|---|---|
| | Year 1940 | Year 1941 |
| Mather Trust #36 | $17,946.17 | $1,192.68 |
| Mather Trust #37 | 17,959.77 | 17,783.04 |
| Mather Trust #49 | 14,515.72 | 14,704.32 |
| Mather Trust #131 | 15,503.74 | 15,070.92 |
| | 65,925.40 | 48,750.96 |

11. Under date of January 21, 1944, petitioner entered into an agreement with the respondent on Form 872 (Consent Fixing Period of Limitation Upon Assessment of Income and Profits Tax), whereby the statutory period for assessment of income tax against petitioner for the year 1940 was extended to June 30, 1945. The income tax for the year 1940 heretofore assessed against petitioner in the amount of $31,029.45 (as shown by the deficiency letter) was paid within three years before the execution of said agreement, and said agreement was executed within three years from the time of filing of petitioner's 1940 income tax return.

12. The income tax for the year 1941 heretofore assessed against petitioner in the amount of $36,501.51 (as shown by the deficiency letter) was paid within three years before the mailing of the notice of deficiency, and said notice of deficiency was mailed within three years from the time of filing of petitioner's 1941 income tax return.

The respondent contends that petitioner is taxable on all the income of the several trusts involved, under the provisions of sections 22 (a),

1004

166, and 167 (a) of the Internal Revenue Code. As to the applicability of section 22 (a), the respondent's argument is that the broad powers of control which petitioner retained over the trust properties, such as the right to have the trust make any loans, sales, or purchases which he might direct in writing and the right to have the income used for the maintenance and education of his minor children, bring the case within the rule of *Helvering* v. *Horst*, 311 U. S. 112; *Whiteley* v. *Commissioner*, 120 Fed. (2d) 782, and like cases. Section 167 (a) is applicable, respondent contends, under the rule of *Helvering* v. *Stuart*, 317 U. S. 154, because of the right of petitioner to have the income used for the maintenance and education of his minor children; while section 166 is said to be applicable because of the right of petitioner to direct the trustee to make loans (to petitioner) of the trust funds.

Petitioner contends that he retained no control over and no right to any economic benefits from the trust properties; that the income from the trusts could have been used for the maintenance and education of his minor children only if their support had become burdensome to him, an eventuality which did not occur; and that the mere fact that it might have become possible for the income to be so used does not make it taxable to him.

It is by no means clear from a reading of the trust agreements that petitioner's right to have the income of the trusts used for the maintenance and education of the children was dependent upon the condition that their support should become burdensome to him. The reservation of the right is made in clear and concise words. The complete paragraph, paragraph 8, section 6, article I, quoted above, reads:

The Donor retains the right to elect at any time to have all or any part of the net income used for the maintenance and education of his said son, Rathbun Fuller Mather, or said son's lineal heirs.

The only possible qualification of that right is found in the fourth paragraph of the same section, which deals with the distribution of the income by the trustee. It is to be noted that in that paragraph, which is also quoted above, the words "subject to the clause hereinafter inserted providing for the use of same for the maintenance and education of said beneficiary, should same become burdensome to Donor," are set off by dashes and do not appear to have been used with any particular force. Certainly it is not clear that they were intended to modify or qualify the later more direct provision which gives petitioner the right to require the trustee to make the payments.

Under the rule of *Helvering* v. *Stuart*, *supra*, the income of the trusts would be taxable to the petitioner if he retained the discretionary power to have it used for the maintenance and education of his dependent children, unless section 167 (c) applies. Under that subsection petitioner would be taxable in any event only upon the

income that was so used, and it is stipulated that none was so used. In the enactment of section 167 (c) the Senate Finance Committee reported that:

* * * subsection (c) is not applicable if discretion to apply or distribute the trust income for support, maintenance or education rests solely in the grantor or in the grantor in conjunction with other persons unless the grantor has such discretion as trustee. [Senate Finance Committee Rept. No. 627, p. 56, 78th Cong., 1st sess.]

Petitioner was not a trustee and his rights with respect to trust income and corpus were not subject to any restraints. Cf. *Henry A. B. Dunning*, 36 B. T. A. 1222.

Petitioner further argues that in no event could the income here have been used by the grantor for his own benefit or even for the "enjoyment" of the beneficiaries, as in the *Whiteley* case, *supra*, but had to be used, if at all, for the maintenance and education of the beneficiaries. That argument is no help to petitioner. The maintenance and education of his minor children was a legal obligation of petitioner under the laws of the State of Ohio, as pointed out by petitioner in his brief, and the satisfaction of that obligation with trust income would have resulted in his economic benefit. *Douglas* v. *Willcuts*, 296 U. S. 1; *Helvering* v. *Schweitzer*, 296 U. S. 551; *Helvering* v. *Blumenthal*, 296 U. S. 552; *Helvering* v. *Coxey*, 297 U. S. 694; *Helvering* v. *Grosvenor*, 85 Fed. (2d) 2. Cf. *Henry A. B. Dunning*, *supra; R. L. Gray*, 38 B. T. A. 584; and *Jay C. Hormel*, 39 B. T. A. 244.

But even if section 167 is not applicable on the facts, we think that the income of the trusts must be held taxable to petitioner under section 166 because of petitioner's retention of the right to require the trustee to make loans, sales, and purchases such as he might direct in writing. That provision of the trust agreements is also without any qualification. Petitioner was under no fiduciary obligation to use the rights to the best interests of the beneficiaries. For all that the trust agreements show, and we have no other evidence before us, he could have required the trustee to sell the trust assets or lend the trust funds to himself upon any terms that he might have named. Such rights have been held to be tantamount to a power to revoke the trust. *Estate of William J. Garland*, 42 B. T. A. 324 (supplemented, 43 B. T. A. 731); *Percy M. Chandler*, 41 B. T. A. 165; affd., 119 Fed. (2d) 623; *Charles T. Fisher*, 28 B. T. A. 1164.

While under general trust law it is the duty of the trustee to preserve the trust estate for the beneficiaries, the power to do so is limited to that conferred upon the trustee by the grantor of the trust. Equity courts will go no farther than to protect the beneficiaries in the enjoyment of the rights actually granted to them by the terms of the trust agreement. That was clearly brought out by the court in its opinion in the *Chandler* case, *supra*. Here we find nothing in the trust agree-

ments which must be construed as giving the beneficiaries the right to prevent the grantor from partially or entirely revoking their trusts by calling upon the trustee to sell the trust assets to him for a consideration of less than fair value or to lend the trust funds to him without security. For all that is shown, petitioner might have done either under the powers which he reserved to himself in the trust agreements. He retained rights broader than mere control over the trust investments. Cf. *Christopher L. Ward*, 40 B. T. A. 225. While it might be argued that the words "sales" and "purchases" connote transfers or acquisitions for a fair and adequate consideration, no like meaning can be given to the word "loans." In *Estate of William J. Garland, supra*, the right reserved by the grantor was to borrow on his unsecured note $100,000 of the trust funds, or have the trustee furnish trust property as collateral for loans of that amount from other sources. For that reason we held that the income from that portion of the trust fund was taxable to the grantor. We can not find that the petitioner's rights in the trust properties here were any less.

We think that the respondent's determination that petitioner is taxable upon all the income of the trusts must be sustained.

*Decision will be entered under Rule 50.*