OPINION. Disney, Judge-. 1. The Commissioner in the deficiency notice increased petitioner’s reported taxable income for 1939, 1940, and 1941, (so far as herein concerned) by adding thereto $10,385.14, $12,220.54, and $11,413.42, respectively. It is stated in the notice of deficiency that these amounts represent one-fourth of the net income disclosed on the partnership return of Alexander Brothers Baking Co. and shown thereon as distributable income to Helen Alexander or Helen Alexander trust. The Commissioner held that such income was taxable to petitioner under section 22 (a), or under sections 166 and 167, of the Internal Revenue Code. Is such income taxable to petitioner under section 22 (a) ? The Commissioner contends that it is, under the doctrine of Helvering v. Clifford, 309 U. S. 331, and cases stemming therefrom. The petitioner argues that under the constitution and laws of Kansas a wife may have her sole and separate property and may enforce her rights in and to such property even against her husband; that under the laws of Kansas petitioner was required to execute the trust in the interest of the beneficiary, and under no circumstances would he be permitted to act in his own interest; that the gift to the wife was a proper and ] awful means of perpetuating the traditional character of the business as a family partnership; and that the gift in trust divested petitioner of all economic interest or benefit in the trust estate or in the income therefrom and he was in no sense the owner of the trust estate, and hence the income of the trust was not taxable to him. That the arrangement was valid under the constitution and laws of Kansas is not determinative of the issue involved. Commissioner v. Tower, 327 U. S. 280. See also Doll v. Commissioner, 149 Fed. (2d) 239; certiorari denied, 326 U. S. 725. Whether or not petitioner remained the owner of the partnership interest and income for purposes of section 22 (a) is a question of fact. Helvering v. Clifford, supra. On January 1, 1939, petitioner owned a three-fourths interest in the partnership business of Alexander Brothers Baking Co. His uncle owned the remaining one-fourth interest. The management of the business was vested in petitioner. On January 1, 1938, petitioner executed an instrument in which he declared that he held in trust for his wife Helen an undivided one-fourth interest in such business. Although the instrument provided that the provisions made for the wife: * * * shall be for her sole and separate use without power on my part to revoke, at my will, or to enjoy any beneficial interest therein, and beyond my reach and opportunity to use it for my own personal benefit, it being my purpose to transfer to the beneficiary the right to the property and the immediate present income therefrom, and also to continue to discharge my legal obligation to support my family; 9. She is to have the sole and separate use, free from all statutory and marital rights which I might have therein as her husband * * * it also provided that the wife was to be without right to assign, pledge, or anticipate in any way whatever the income or corpus of the trust, nor was the income or corpus subject to the claims of her creditors. The purpose of petitioner, as stated in the indenture, was not only to provide for his wife “an assured living free from interference by any creditors for any debt or obligation contracted by me subsequent to the creation of this trust,” but also “to conserve my [petitioner’s] estate as much as possible.” The intention of petitioner, as expressed in the indenture, was to retain as trustee such rights, power, and authority in respect to the management, control, and disposition of the “trust estate and the business of which it is a part” as he had with respect to property absolutely owned by him and to his interest in the business. The income of one-fourth interest, after payment of expenses, was payable to the beneficiary as petitioner might deem it to be for the “best interest of said beneficiary and this trust estate,” and the income not distributed was to be added to the principal of the trust. If the beneficiary died, the trust estate immediately reverted to petitioner absolutely. The wife at no time rendered any personal services to the business. Clearly the trust indenture effected no change in the investment, in the management and control, or in the operation of the business. It is true that petitioner’s wife received cash withdrawals from the business which she deposited in her bank account. Whenever petitioner drew funds from the business, a check for a like amount was issued to the wife, and not to petitioner as trustee for distribution to the beneficiary. As stated in the Clifford case, supra: * * * Since the income remains in the family and since the husband retains control over the investment, he has rather complete assurance that the trust will not effect any substantial change in his economic position. It is hard to imagine that respondent [petitioner] felt himself the poorer after this trust had been executed or, if he did, that it had any rational foundation in fact. For as a result of the terms of the trust and the intimacy of the familial relationship respondent retained the substance of full enjoyment of all the rights which previously he had in the property. * * * The bundle of rights which he retained was so substantial that respondent cannot be heard to complain that he is the “victim of despotic power when for the purpose of taxation he is treated as owner altogether.” * * * The facts that the powers and control over the trust principal and income were reserved to petitioner as trustee and that the courts upon appeal to it by the beneficiary would review and correct any abuse of the trustee’s powers and discretion are not determinative of the question here. When consideration is given to the broad powers and discretion vested in the donor and to the relationship existing between the donor and the beneficiary, “it is wholly improbable that a beneficiary would exercise his right to resort to a court of equity to restrain the discretion of the donor.” Cox v. Commissioner, 110 Fed. (2d) 934 (C. C. A., 10th Cir.); certiorari denied, 311 U. S. 667. As stated in Rollins v. Helvering, 92 Fed. (2d) 390 (C. C. A., 8th Cir.); certiorari denied, 302 U. S. 763: * * * A court of equity has power to control the administration of a trust so that it will accord with the purposes of the grantor. This power exists solely for the protection of rights of the grantor who created the trust and of the rights of the beneficiaries of the trust — there is no public interest in the matter where the parties to the instrument are purely private parties. See also, Harold F. Jones, 6 T. C. 412, and Gordon M. Mather, 5 T. C. 1001, where we said: * * * Equity courts will go no farther than to protect the beneficiaries in the enjoyment of the rights actually granted to them by the terms of the trust agreement. Those terms have above been seen to reserve very broad powers to the petitioner. The case of Armstrong v. Commissioner, 143 Fed. (2d) 700 (C. C. A., 10th Cir.), cited by petitioner, is distinguishable. In that case taxpayer owned a 50 percent interest in a partnership. Upon the death of his father in 1937 he acquired an additional 5 percent interest., which interest he determined to keep separate from his own. Taxpayer’s mother acquired a 30 percent interest, and his sister and two brothers each acquired a 5 percent interest. A new partnership agreement was entered into by the parties in 1938 upon the closing of the father’s estate, in which each of them was to have a voice in the management and control of the partnership business, petitioner being given the general management, supervision, and control of the partnership business. The affairs of the partnership were discussed at length in partnership meetings held at least once a year and all matters of policy concerning its operations were approved by all the partners. In 1938 petitioner executed a declaration of trust purporting to transfer to himself as of June 1, 1938, the 5 percent interest in the partnership in trust for the benefit of his 2 minor children. The trust was to terminate when the youngest child, then aged 13, became 25 years of age, at which time the corpus and accumulated income was to vest equally in the two beneficiaries or the survivor of them, and in the event of the death of both of them, in their mother. The Circuit Court of Appeals for the Tenth Circuit in its opinion, in distinguishing the situation in the Armstrong case from that in the Clifford case, pointed out that the property did not revert to the donor, that there was no way by which he could be'reinvested of any interest in the corpus by operation of the trust declaration, and that, although taxpayer was the manager of the partnership business, every member of it had an equal voice in the management thereof, irrespective of the amount of interest. Herein, upon the death of the beneficiary, the property did revert to petitioner and the petitioner had complete control of her interest and the distribution of the income. In our opinion, the broad and extensive powers over the trust estate and income reserved to petitioner as trustee and his actual and complete control of the partnership business of which the trust res and accumulated income was a part gave him a dominion over the trust corpus substantially equivalent to full ownership. It is therefore our conclusion that the respondent did not err in taxing one-fourth of the net income of the partnership attributable to the Helen Alexander trust in 1939,1940, and 1941 to the petitioner under the provisions of section 22 (a). In view of this conclusion it is not necessary to determine whether sections 166 and 167 are applicable. 2. In his amended answer the respondent alleged that he had erred in failing to increase the taxable income of petitioner for the years 1940 and 1941 in the amounts of $12,220.54 and $11,413.42, respectively, representing the net income from the one-fourth interest in the baking business purchased on January 2, 1940, from Samuel Alexander, petitioner’s uncle. The burden of proof as to such increase in deficiency is on the respondent. It is argued by him that in the purchase of his uncle’s interest, petitioner, and not his wife, was the real party in interest, that the transaction constituted nothing more than an attempt by petitioner to give his wife a one-fourth interest in the business so as to make her a partner therein, that petitioner’s control over the interest was not less than that exercised by him over the share held in trust for his wife, and that, as in the situation involving the setting up of the trust, there was no execution of a partnership agreement and no carrying on of a business in partnership with his wife, that petitioner’s attempt to change the form of the business to a partnership of himself and wife was not real and substantial and he did not thereby form “an essentially new and different economic unit.” Earp v. Jones, 131 Fed. (2d) 292 (C. C. A., 10th Cir.). The evidence shows that under date of January 2, 1940, petitioner and his wife entered into an agreement with his uncle and wife for the purchase of the uncle’s one-fourth interest in the business by petitioner’s wife for the sum of $35,000. Petitioner’s wife paid the amount of $35,000 with her own check. However, as of January 1, 1940, she had only about $5,000 in her bank account and this $5,000 represented moneys which had been withdrawn from the business in 1939. In order to meet the check issued by the wife, petitioner and hi9 wife arranged a bank loan of $30,000 and petitioner’s wife executed a note in that amount. Petitioner endorsed the note and assigned to the bank certain stocks owned by him as collateral security for the p'ayment of the note. The bank loan to the extent of $28,000 was paid by petitioner’s wife by checks drawn on her bank account to which had been deposited withdrawals from the business, loans without interest from petitioner totaling $12,000, and loans from petitioner’s parents aggregating $9,000. Such loans, together with interest on the loans from petitioner’s parents, were repaid by withdrawals from the business. The final payment of $2,000 was paid by petitioner, for which he has not been reimbursed by his wife. The loans, except the $2,000 from petitioner, for which he was not reimbursed by his wife, were repaid by her during 1940, except $9,000 repaid in September 1941. Upon the facts of this case, we must now answer, as to the purchased quarter interest, the question posed in these husband and wife partnership cases: “Did the husband, despite the claimed partnership, actually create the right to receive and enjoy the benefit of the income, so as to make it taxable to him?” (Commissioner v. Tower, supra.) This one-fourth did not originate with or come to the wife from the petitioner, as is the situation in the cases cited by the respondent, and many others involving this general question. It was purchased from the uncle, and the gist of the question is, in a large sense, who purchased it, petitioner or his wife? In our view, she did so. He signed the agreement with the uncle, but on the face of the instrument it is apparent that he did so merely to agree to the sale of the partnership interest, a prerequisite to any properly conducted sale of such interest, and to agree, together with his wife, that all partnership debts should be paid, relieving the uncle from that liability. Nothing in the instrument indicates that petitioner was purchaser. He was not a grantee in or signatory to the bill of sale from the uncle and wife to Helen Alexander, whereby the one-fourth partnership was conveyed. On the question of contribution of capital to the partnership, we have here in large part no mere transfer from husband to wife, as in Commissioner v. Tower, supra, and Lusthaus v. Commissioner, 327 U. S. 293, and many other cases. The $30,000 note was repaid. To the extent of $9,000 it was repaid by loans from petitioner’s father and mother, and there is no showing that petitioner had any connection with such loans. The quarter interest purchased from the uncle itself produced $12,101.79 in 1940 (and the wife received title on January 2,1940), and $11,311.55 in 1941, which is more than sufficient to repay the $21,000 borrowed from petitioner and his parents, and which was repaid to them. Thus, it appears that the petitioner contributed only $2,000, for which he was not reimbursed, and the fact that $12,000 was a loan, repaid to him, is some indication that the other $2,000 was also a loan. The mere fact that it had not been repaid at time of trial does not prove otherwise. Considering the earnings of the quarter interest, it is apparent that only $5,000 of the $35,000 purchase price is shown to have originated with the other quarter interest held in trust, the income of which we have held belonged to petitioner, and thus to have originated with him, making $7,000 not originating with the wife. (The earnings and withdrawals from the trust quarter interest are, in the absence of explanation, sufficient to cover her other expenditures.) We think that such fact is not sufficient, under all the circumstances here, to place this case in the same category with those where the entire capital contribution arose from the earnings in the partnership of the party held taxable. The uncle from whom this quarter interest came is not the petitioner here. We held, in effect, in Carlton B. Overton, 6 T. C. 304, and in Abe Schreiber, 6 T. C. 707, that, though income was taxable to a husband, a gift thereof to the wife was effected by her receipt of the income with the husband's consent, and property purchased by her therewith was her own. Under all the facts, we think that principle is applicable here, where the amount is only one-fifth of the purchase price, from one not the husband or petitioner, where it is not shown that tax avoidance was the motive, but where one partner wished to sell and it was desired to keep the business in the family, in accordance with many years custom. Mere desire to reallocate family income is not demonstrated by the respondent, with the burden of proof. We may not here regard a gift of $2,000 by husband to wife (if in fact it is not loan, like the other $2,000, and still to be repaid) as determinative proof that the husband was the real purchaser. The loan of his name as endorser, which cost him nothing, likewise fails to indicate sham or unreality in the uncle’s sale to petitioner’s wife. We see nothing here that a husband might not reasonably do in assisting his wife, and not himself, to acquire another’s partnership interest. That the wife contributed no services to the partnership is only one element to consider. Commissioner v. Tower, supra. The petitioner is not shown to have received, or to have had the right to receive, the profits from the purchased partnership interest. On the contrary, it is stipulated that the wife maintained her own bank account, that petitioner had no authority to draw checks on it, and that her withdrawals, which amounted in 1940 to $25,000 and in 1941 to $15,000, were deposited in her bank account. Upon the facts before us, as to the purchased quarter interest, we are of the opinion that this is one of those instances recited in Commissioner v. Tower, supra, where a wife becomes a real partner, and that the petitioner did not create the right to receive and enjoy the benefit of the income from that interest. It has not been shown otherwise. We deny the increases in deficiency sought by the respondent. Decisions will be entered under Rule 5Q.